Josepha HOLIFIELD, Appellant,

v.

The STATE of Texas, Appellee.

No. 51745.

Court of Criminal Appeals of Texas.

July 7, 1976.

Robin M. Green, Amarillo, for appellant.

Thomas A. Curtis, Dist. Atty., Bruce P. Sadler, Asst. Dist. Atty., Amarillo, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for the offense of burglary of a building with intent to commit theft. The court assessed punishment at ten years.

The sufficiency of the evidence is unchallenged. Appellant contends that a new trial should have been granted because the jury was not allowed to express their feelings to the court after it had returned a verdict and that the judge was disqualified because at one time he was a district attorney in an adjoining county and had instituted prosecution against her for another offense. These contentions are overruled.

In the early morning hours of January 9, 1974, a burglary occurred at the Catching Pharmacy located at 811 Lamar Street, Amarillo. While the burglary was in progress, police arrived on the scene and found that a hole had been chopped in the roof of the pharmacy. Appellant and three companions were arrested at the scene.

In her first ground of error, appellant contends that the trial court erred in refusing to grant a new trial because several jurors stated in their affidavits that they thought their deliberations were not complete at the time their verdict was returned and that the court declined to hear their opinion when they returned the verdict.

The trial lasted three days. The jury received the court's charge the afternoon of the second day, March 18, 1975. At approximately 6:05 p. m., the jury foreman sent to the court a note as follows: "It appears that the jury is unable to reach an unanimous verdict." The jury was returned to the jury box and inquired of by the court as to its numerical split without having the foreman state it in terms of guilty or not guilty. The foreman replied that it was an 11–1 split. The court then inquired of the foreman as to whether or not he felt further deliberation in the morning would be meaningful after the jury had the night to think it over. In response the foreman stated that he could not speak for the one individual but that he thought the jury would be willing to wait and see. At 9:00 o'clock the next morning the jury resumed its deliberations. At 9:45 a second note was received from the jury as follows:

".   .   .   'Judge Dowlen, the jury requests clarification concerning Paragraphs 7 and 8 of the Charge to the Jury. Paragraph 7, is intent known only subjectively, that is, known only to the Defendant in her own mind, and then known only to the jury by her testimony of how she felt, or can intent be known ultimately by a person's actions?' "

and,

" 'Paragraph 8. Is a person responsible for what he hears while intoxicated, as well as any resulting actions? By hears, we want to include what was said in her presence.' "

By agreement of counsel and the appellant herself, the following written reply was sent to the jury by the court:

".   .   .   'Mr. McGee, I can only refer you to Paragraphs 6 and 7 which read together constitute the law concerning intent in this case.

" 'Concerning Paragraph 8, intoxication, I can only refer you to the Court's Charge.' "

At 11:45 a. m. another note was received from the jury as follows:

".   .   .   'Judge Dowlen, is it permissible to have read into the record of this case an opinion of the jury which would not affect the verdict, but express the feeling of the jury? We have reached a unanimous decision on this case.' "

The jury was returned to the jury box after argument by the prosecutor that such opinion should not be allowed to be read into the record. When the jury returned, the court asked the foreman, "Mr. McGee, has the jury reached a verdict?", to which McGee responded, "Yes, sir, we have."

The verdict was then read aloud by the court followed by the inquiry, "Ladies and gentlemen, is this your verdict?" The jury answered affirmatively. Defense counsel then requested the jury be polled and each member of the panel was asked individually if the verdict as read was his or her verdict and each juror answered affirmatively. The jury was then discharged with instructions that they were now free to discuss the case with counsel if they desired and could give or not give an affidavit. Defense counsel objected to their discharge.

A hearing was then held so that defense counsel might perfect his bill of exception to the court's order discharging the jury. At this hearing eight jurors testified, two of which testified that they had never intended to vote guilty and had been misled or tricked into doing so. Three others testified that in their minds deliberations had not been completed when their verdict was returned. A ninth juror submitted an affidavit at a later date wherein she stated that deliberations had not ended and that she too had never intended to enter a final vote of guilty. It is urged that these jurors were under the impression that their deliberations were not completed until after the trial court considered the formal statement they requested to make in their third note to the court. Yet, in their third note wherein they requested to make a statement to the court, the jury had written, "we have reached a unanimous decision on this case." The jury, as noted earlier, was polled and each juror acknowledged the verdict as his own in response to individual questioning by the court. Jurors will not

be permitted to impeach their verdicts by giving their reasons for agreeing thereto.

The extenuating circumstances apparently concerned the testimony that appellant was intoxicated at the time the offense was committed.

 Even though one or more jurors may have disagreed with a portion of the court's charge which stated that voluntary intoxication is no excuse for committing a crime and at least one juror had misgivings about returning a guilty verdict, this is not grounds for granting a new trial. *Simmons v. State*, 493 S.W.2d 937 (Tex.Cr.App.1973); *Hill v. State*, 493 S.W.2d 847 (Tex.Cr.App. 1973); *Arnold v. State*, 486 S.W.2d 345 (Tex.Cr.App.1972), and *Adams v. State*, 481 S.W.2d 884 (Tex.Cr.App.1972). No misconduct of the jury has been shown.

The conscientious jurors in this case, in keeping with their oath, followed the instructions of the court concerning the law even though some of them were not happy in doing so. Even though some of the jurors were not pleased with the law as submitted to them, this does not require setting aside the verdict.

In her second ground of error, appellant alleges that it was error for the trial judge, the Honorable George E. Dowlen, not to have disqualified himself from hearing this case because he had been acting prosecutor in a case which was still pending against her in Randall County. Her contention is without merit.

The prohibition found in Article 5, Section 11 of the Texas Constitution and Article 30.01, V.A.C.C.P., against a judge hearing a case in which he has acted as counsel requires that he actually have participated in the very case which is before him and it is not necessary that an objection be made. The record in the instant case shows that Judge Dowlen had been the district attorney in Randall County when two cases were pending against appellant, one in district court and another in county court. The district court case had been dismissed on January 7, 1974, and the case in county court was still pending at the time of this trial in Potter County. The evidence showed that Judge Dowlen had never participated in the prosecution of this case. He was not disqualified from sitting in the instant case. *Carter v. State*, 496 S.W.2d 603 (Tex.Cr.App.1973); and *Rodriguez v. State*, 489 S.W.2d 121 (Tex.Cr.App. 1973).

No error having been shown, the judgment is affirmed.