Marshall Darnell JOSHUA, Appellant,

v.

The STATE of Texas, Appellee.

Jenna Culbreth VALDEZ, Appellant,

v.

The STATE of Texas, Appellee.

Nos. A14–83–751–CR, A14–83–752–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 22, 1985.

J. Brent Liedtke of Cooper, Liedtke & Associates, Galveston, for appellant.

Mike Guarino, Dist. Atty., Miguel Martinez, Asst. Dist. Atty., Galveston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

J. CURTISS BROWN, Chief Justice.

This is a consolidated appeal from a conviction by a jury for possession of a controlled substance (heroin). Appellants were tried together. Both pled not guilty. The jury assessed punishment for both at 50 years imprisonment under the habitual criminal statute. Before trial, appellant Joshua filed petitions to quash the search warrant and to suppress evidence obtained during an allegedly illegal search and seizure. The trial court denied the motions after a hearing. Appellants raise four grounds of error: sufficiency of the evidence, impartiality of the warrant-issuing

judge, insufficient basis for the search warrant, and failure to return seized items. We affirm Joshua's conviction and reverse Valdez'.

Marshall Joshua and Jenna Valdez moved into an apartment together in Galveston late in 1982. Galveston police officer Jerry Roberts placed appellants under surveillance based on the belief that appellants were selling heroin out of the apartment. The surveillance continued off and on for three months up until the date of appellants' arrest, March 2, 1983. The surveillance indicated appellants made trips to Houston 7-Eleven or Kroger stores four times in one week immediately preceding their arrest. An officer testified that the traffic of people in and out of appellants' apartment became heavier each time they returned from Houston.

Officer Roberts, who followed appellants during the trip they made to Houston on the 25th of February, testified that they stopped at a Kroger store off the Fuqua exit, parked their car, and went into the store. Joshua left the store temporarily to get into another vehicle, which took him down the street for about a block and then circled back to the store. He rejoined Valdez inside the store. Both returned immediately to Galveston.

Officer John Lopez, who conducted the surveillance of the trip to Houston appellants made March 2, testified to a similar sequence of events: appellants stopped at a Houston 7-Eleven store, appellant Joshua left momentarily to ride in another car for a few minutes, and then he returned to his own car to return to Galveston with Valdez. Officer Roberts' information had been that appellants were making the trips to Houston to purchase heroin, but he admitted that no officer actually observed heroin changing hands during these episodes.

The day before the arrest, the door to appellant's apartment was momentarily left open. Officer Lopez observed Valdez bent over a table doing something to her left arm. The State theorized at trial she might have been injecting heroin. Valdez testified she was probably putting on her watch. Also, that day or the next morning, a confidential informant notified Officer Roberts that he had observed Valdez and Joshua in possession of a quantity of heroin at their apartment.

Officer Roberts testified that on March 2, 1983, he and two other officers executed a search and arrest warrant at appellants' apartment. After obtaining a key from the building's manager, the officers searched the apartment and awaited appellants' arrival from the last of their four trips to Houston. The officers found, in a drawer in appellants' kitchen cabinet, a metal funnel, a bag of balloons, an ashtray with a candle in the middle, a zipper-bag with a metal tablespoon and a bottle cap in it, and another bag containing four syringes. They also found two small scales and three pill containers in the same drawer. Two of the containers were empty methadone containers. The third contained prescription Ogranidin pills. Henry Baker, a police chemist, testified at trial that the funnel, syringes, spoons, bottle caps and scales contained traces of heroin. He added that the amounts of heroin on these items were too low for quantification.

Upon appellants' arrival ten minutes after the police entered, the police officers identified themselves. They told Joshua to get his hands up. He had something in his hand and would not raise it. An officer shoved him against the wall. He dropped something on the floor. After placing the defendants in handcuffs, the officers found a small foil packet on the floor which had not been there before appellants' return. The chemist who analyzed the packet testified that it contained 2.38 grams of 0.02% heroin.

At trial, Valdez admitted to an addiction to heroin lasting from the age of 14 or 15 until her age at trial of 28, but claimed she had ended her addiction six months before the arrest, when she had last left prison. Joshua admitted to four felony convictions, including one for possession of heroin. The other convictions were for offenses committed to support his heroin habit. He

claimed that he had not used heroin for two years. Officer Roberts testified that at the time of appellants' arrest, Valdez exhibited several symptoms commonly associated with heroin withdrawal: watery eyes, runny nose and chills. She had needle marks on her left wrist, while Joshua appeared to have needle marks on both arms. Appellants admitted ownership of the three pill containers found in the kitchen.

## A. Sufficiency of the evidence as to Valdez

■ In a conviction for unlawful possession of controlled substances, the State must prove two elements: (1) that the accused exercised care, control, and management over the contraband, and (2) that the accused knew that the matter possessed was contraband. *Harrison v. State*, 555 S.W.2d 736 (Tex.Crim.App.1977); *Earvin v. State*, 632 S.W.2d 920, 923 (Tex.App.—Dallas 1982, pet. ref'd).

■ Possession of the contraband need not be exclusive and evidence which shows the accused jointly possessed the contraband with another is sufficient. However, a finding of joint possession cannot be justified solely by proof of mere presence at a place where contraband is being used or possessed. *Harrison v. State*. This is particularly true where the accused did not have sole access to the premises. "Where an accused is not in exclusive possession of the premises, it cannot be concluded that he had knowledge of the contraband and independent control over it unless there are additional facts and circumstances which affirmatively link the accused to the contraband." *Meyers v. State*, 665 S.W.2d 590, 593 (Tex.App.—Corpus Christi 1984, pet. ref'd), quoting *Woods v. State*, 533 S.W.2d 16, 18 (Tex.Crim.App. 1976).

In the present case the State's attempt to link Valdez to the drug paraphernalia and traces of heroin found in the kitchen cabinet is unpersuasive. By the State's own testimony, close to a dozen of the most "notorious" members of the Galveston drug community had access to the apartment. No fingerprint evidence was offered to connect Valdez to the paraphernalia. The Organidin pill container found in the same drawer as the paraphernalia was not proven to contain even a trace of heroin. Even though "needle marks" were on Valdez' left wrist, Officer Roberts testified that it was never determined whether they were recent. *See Williams v. State*, 498 S.W.2d 340 (Tex.Crim.App.1973). Although another affirmative link appearing in the cases is whether the defendant was under the influence of the controlled substance, *see Meyers v. State*, 665 S.W.2d at 593, Valdez appeared to be under the influence of heroin *withdrawal*, not heroin *use*. Finally, the State's theory that Valdez was injecting heroin in the course of "doing something with her left arm" the day before the arrest is simply too weak a foundation which to rest a conviction for possession of heroin found a day later in a different area of the apartment.

Concerning the heroin found in the foil packet, the Court of Criminal Appeals held in *Harrison v. State* that evidence which was stronger than that presented in this case was insufficient to sustain a conviction for possession of heroin. In *Harrison*, police observed the defendant's husband trying to dispose of heroin packets into the kitchen sink. At the time the police gained entry into the dwelling, they found the wife seated on a sofa in the living room.. Since the evidence was insufficient to prove the heroin was in close proximity to the wife, her conviction was reversed. Here the foil packet was found on the kitchen floor while Valdez was being handcuffed elsewhere in the room. It had not been in the plain view until after Joshua was pushed. The "affirmative link" of close proximity and ready access to the contraband has not been established in this case. *See Earvin v. State*, 632 S.W.2d at 924 n. 2; *accord*, *Meyers v. State*, 665 S.W.2d 590, 593–4 (Tex.App.—Corpus Christi 1984, pet. ref'd), and authorities cited therein.

Further, the time and place the heroin in the foil was obtained are unknown. Neither defendant was proven to have ob-

tained any heroin on any of the trips the two made to Houston. The State failed to rule out that the appellants were unsuccessful in their attempt to secure heroin in Houston and that the foil packet was obtained earlier and elsewhere, possibly on a day the two defendants were not even together. Thus the state has not shown that Valdez knew the substance in the foil packet was contraband. *Harrison v. State; Earvin v. State,* supra.

In sum, Valdez was not shown to have a connection with the drug paraphernalia found in the pre-arrest search significantly greater than that of any of the other people who also had access to the apartment. "Control of the apartment is not synonymous with control of the contraband when the appellant does not have sole access." *Meyers v. State,* 665 S.W.2d at 595. Therefore, to conclude that Valdez's connection with the paraphernalia establishes a connection with the heroin would require us to base an inference upon an inference to sustain a conviction. That is beyond our power to do. *Espinoza v. State,* 642 S.W.2d 202, 204–5 (Tex.App.—Houston [14th Dist.] 1982, no pet.).

■ In both direct and circumstantial evidence cases, the reviewing court will look at all the evidence in the light most favorable to the verdict or judgment. *Houston v. State,* 663 S.W.2d 455, 456 (Tex.Crim. App.1984) (en banc). However, because the State failed to affirmatively link Valdez with the contraband found in the apartment under the tests of *Harrison v. State* and *Espinoza v. State,* we find the evidence insufficient to support her conviction. Valdez' first ground of error is sustained. Since we regard Valdez' contention as dispositive of her appeal, we will treat the remaining grounds of error as if they were Joshua's only.

B. *Sufficiency of the evidence as to Joshua*

■ As to Joshua's conviction, we once again observe that the reviewing court will look at all the evidence in the light most favorable to the verdict or judgment.

*Houston v. State.* With regard to Joshua, the jury could reasonably have inferred the essential elements, control and knowledge, beyond a reasonable doubt. An officer testified that Joshua had something in his hand, would not get his hand up as he was shoved against the wall, and dropped something on the floor. The foil packet was later found on the kitchen floor where Joshua had been standing. Moreover, the officer stated that the packet had not been on the floor before Joshua was pushed. The lack of certainty as to time and place of purchase of the aluminum foil packet, fatal to the State's case against Valdez, is obviously irrelevant to the question of Joshua's guilt. Viewing the evidence in the light most favorable to the verdict, there was evidence from which the jury might reasonably conclude that every reasonable hypothesis other than guilt was excluded. *Ysasaga v. State,* 444 S.W.2d 305, 308 (Tex.Crim.App.1969). Appellant Joshua's first ground of error is overruled.

■ In his second ground of error appellant argues that the judge who issued the search and arrest warrants in this case did not qualify as a "neutral and detached magistrate" under the U.S. and Texas Constitutions, and that the trial court therefore erred in overruling appellants' petitions to quash the search warrant and suppress the evidence gained by use of the warrant. Judge Ronald L. Wilson, the judge who had issued the search warrant, appeared at a pre-trial hearing held pursuant to appellants' petitions and testified, in part, as follows:

Question: Is there something distinctive about this search warrant that brings it to your memory?

Answer: Well, yes, it is. I used to be the District Attorney here, and I have prosecuted these people before.

Judge Wilson further testified that at the time he issued the warrant, he knew that the statements in the affidavit linking the defendants to earlier drug offenses were correct because he had been involved in the prosecution of the earlier cases. Later, at a related hearing, Judge Wilson was asked

whether he had based his finding of probable cause on that paragraph of the affidavit alleging earlier drug offenses by the two defendants. He answered, "The entire affidavit was considered."

Appellant cites *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) for the proposition that probable cause for the issuance of a search warrant must be determined by a neutral and detached magistrate, and not by an officer engaged in the often competitive enterprise of ferreting out crime. We fail to see the relevance of either case to the present facts. Judge Wilson had no role, either as police officer or as a prosecutor, in the bringing of charges against the appellants in this case. *Cf. Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Appellant urges us in his brief to hold that "[s]urely officer Roberts [the affiant to the affidavit supporting the warrant] was under a duty to approach a magistrate with no prior knowledge of the suspects ..." To so require would leave a number of rural Texas counties judgeless in some criminal cases. We doubt that such was the intent of the holding in *Aguilar* and *Spinelli.*

It is equally clear that applicable Texas law did not disqualify Judge Wilson from ruling on the application for the search warrant. "The prohibition found in Article 5, Section 11 of the Texas Constitution and Article 30.01, V.A.C.C.P., against a judge hearing a case in which he has acted as counsel requires that he actually have participated in the very case which is before him ..." *Holifield v. State,* 538 S.W.2d 123, 125 (Tex.Crim.App.1976). Appellant's second ground of error is overruled.

In his third ground of error, appellant challenges the affidavit supporting the issuance of the search warrant. He contends that the absence of statements detailing the manner in which the informant's information was gathered vitiates the affidavit and warrant. Appellant further contends that use of the word "they" to identify the informant in the affidavit leaves it unclear whether the informant had personally observed the defendants in possession of heroin. The affidavit in question recites in pertinent part:

> An informant stated to me that they had observed Jenna Louise Culbreth, & Marshall Darnell Joshua in possession of a quantity of Heroin at the above described place and premises within the past twenty-four hours.
> I believe this information to be reliable and credible because it was told to me by an informant that has in the past given me information in regards to narcotic offenders. This information has proven to be true and correct on each and every occasion. This information has led to the arrest and conviction of several narcotic offenders....

█ It has been held that an affidavit stating that the informant has, on the day the affidavit was made, personally seen marijuana and heroin in the described premises in possession of the appellant and that the informant is reliable and credible by reference to prior correct information regarding narcotic traffic is a sufficient showing of probable cause to support the issuance of a search warrant. *Casas v. State,* 462 S.W.2d 581, 582 (Tex.Crim.App. 1970), *cert. denied,* 404 U.S. 841, 92 S.Ct. 135, 30 L.Ed.2d 75 (1971). The absence of a detailed description of the informant's basis of knowledge does not vitiate the warrant.

█ In interpreting affidavits for search warrants, magistrates and courts must do so in a common sense and realistic fashion. *Powell v. State,* 505 S.W.2d 585 (Tex.Crim.App.1974). They are usually drafted by non-lawyers in the haste of a criminal investigation and "[t]echnical requirements of elaborate specificity ... have no proper place in this area." *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). *See Frazier v. State,* 480 S.W.2d 375, 379 (Tex.Crim.App. 1972). The record reflects that the warrant-issuing judge understood the first sentence of the affidavit as a statement that

the informant personally observed the heroin. Use in the affidavit of the word "they" rather than "he" could be attributed to grammatical error by the affiant. It was reasonable for the judge to conclude from these facts that a search would yield heroin. *Vega v. State*, 680 S.W.2d 515 (Tex.App.—Houston [1st Dist.] 1984, no pet.). The third ground of error is overruled.

 In his fourth ground of error, appellant contends that the failure by the police to make return on the items seized from appellants' apartment as ordered by the terms of the warrant should vitiate the warrant. Appellant concedes that the general rule is that a failure to make a return on a warrant to the magistrate will not vitiate the warrant. *Pecina v. State*, 516 S.W.2d 401, 404 (Tex.Crim.App.1974). But he urges us to create exception to this rule in this case because, according to his view, the lack of concern over such failure to make return shown by Judge Wilson, the magistrate who signed the warrant, was symptomatic of his overall "non-neutrality" in this case. Thus, he argues, this challenge to the failure to make return of seized items is unique because it challenges the magistrate's behavior, not only that of the police.

In disposing of this contention we need not reach the question of whether non-neutral behavior by a judge may vitiate a warrant. *See Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 326–7, 99 S.Ct. 2319, 2324–25, 60 L.Ed.2d 920 (1979). In the present case we do not see the alleged lack of interest by the warranting-issuing judge in the timeliness or completeness of the return of seized items as necessarily indicative of nonneutrality. First, an initial "lack of interest" shown by a judge in the failure to make return might well change to intense interest where a defendant makes a showing of harm caused by the failure. Appellant does not argue that he attempted to make such a showing in this case. Further, a "lack of interest" in the state of seized items cannot be presumed "non-neutral" or "nondetached" in view of the appellate case law holding that failure to make proper return does not, in the absence of harm to the defendant, prejudice the defendant's rights. *Pecina v. State; Phenix v. State*, 488 S.W.2d 759, 765 (Tex. Crim.App.1972). Appellant's fourth ground of error is overruled.

The judgment of the trial court in Cause No. A14–83–751CR (Trial court No. 39,169) is affirmed. The judgment in Cause No. A14–83–752CR (Trial Court No. 39,170) is reversed with instructions that the trial court enter a judgment of acquittal. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).