NO. 07-04-00483-CR


IN THE COURT OF APPEALS


FOR THE SEVENTH DISTRICT OF TEXAS


AT AMARILLO


PANEL B


NOVEMBER 9, 2005


______________________________


 NATHAN RIOS, APPELLANT


V.


THE STATE OF TEXAS, APPELLEE


_________________________________


FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;


NO. 2003-404,583; HONORABLE JIM BOB DARNELL, JUDGE


_______________________________


Before QUINN, C.J. and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION


 Appellant, Nathan Rios, appeals his conviction for attempted capital murder and
sentence of 75 years confinement. We affirm.

 On December 6, 2003, Jomando Rubio and his common law wife, Melody Magallan,
were heading home after taking their children to a birthday party. Upon nearing their home,
Rubio noticed a vehicle coming up quickly behind them. When the pickup truck pulled
alongside them, Magallan yelled that the man had a gun. Rubio sped up and a chase
ensued. At various times during the chase, the passenger in the truck fired shots from a
handgun at the vehicle being driven by Rubio. Neither Rubio nor Magallan knew the
person shooting at them. During the incident, Magallan was shot in the head. Rubio was
ultimately able to escape to his father's apartment. 

 Appellant presents three issues for our consideration. Issues one and two allege
error in the court's charge and issue three contests the factual sufficiency of the evidence. 

 Appellant contends that the trial court committed reversible error because its charge
to the jury, during the guilt/innocence phase of the trial, failed to properly define intentionally
and knowingly. Specifically, appellant contends that the definition of intentionally was
erroneous because it was not limited to the result of appellant's conduct. Additionally,
appellant urges that the definition of knowingly, or with knowledge, was erroneous because
it failed to define the term by reference to the result of appellant's conduct.

 Attempted capital murder, as alleged in the indictment, is a "result of conduct"
offense. Turner v. State, 805 S.W.2d 423, 430 (Tex.Crim.App. 1991). A "result of conduct"
offense means that the accused had to have a particular mind set (i.e., intentional or
knowing) to cause the prohibited result. Richie v. State, 149 S.W.3d 856, 857
(Tex.App.-Amarillo 2004, no pet.). Accordingly, a trial court must instruct the jury as to the
appropriate mens rea, i.e., the result of appellant's conduct, in an attempted capital murder
charge. Hughes v. State, 897 S.W.2d 285, 295 (Tex.Crim.App. 1994).

 Appellant contends, and the State agrees, that the charge, as presented, contained
a definition for intentional that included both nature of conduct and result of conduct
elements. Further, both the appellant and the State agree that the abstract definition of
knowingly, or with knowledge, in the charge did not contain the required result of conduct
language. Likewise, both appellant and the State agree that trial counsel did not object to
the charge before it was read to the jury. 

 Because the alleged jury charge error is raised for the first time on appeal, to
reverse the judgment, any error must have resulted in egregious harm to appellant. 
Medina v. State, 7 S.W.3d 633, 639 (Tex.Crim.App. 1999). However, when the application
paragraph, where the elements of the offense are applied to the particular accusation
against the appellant, correctly instructs the jury regarding the result of conduct mens rea,
an error contained in the abstract definitional paragraph is not egregious. Id. at 640. (1) 
Having found no egregious harm, appellant's first two issues are overruled. 

 Appellant next contends that the evidence is factually insufficient to prove beyond
a reasonable doubt that appellant intended to cause the deaths of more than one person. 
When an appellant challenges the factual sufficiency of his conviction, the reviewing court
must ultimately determine whether, considering all the evidence in a neutral light, the jury
was rationally justified in finding defendant guilty beyond a reasonable doubt. See Zuniga
v. State, 144 S.W.3d 477, 484 (Tex.Crim.App. 2004). There are two ways in which the
evidence may be factually insufficient. First, when considered by itself, evidence
supporting the verdict may be too weak to support the finding of guilt beyond a reasonable
doubt. Id. Second, considering all of the evidence, both for and against the verdict, the
contrary evidence may be so strong that the beyond-a-reasonable-doubt standard could
not have been met. Id. at 484-85. While we review the evidence in a neutral light, we must
give appropriate deference to the jury's evaluation of the evidence, resolution of any
inconsistencies, and determination of the evidence's weight and value. Johnson v. State,
23 S.W.3d 1, 8 (Tex.Crim.App. 2000). We are not allowed to substitute our judgment for
that of the jury unless the verdict is clearly wrong and manifestly unjust. Zuniga, 144
S.W.3d at 481-82. 

 A neutral review of the record reveals that appellant had multiple opportunities to see
the occupants in Rubio's vehicle. Rubio testified that appellant's vehicle pulled up next to
Rubio's side of the car and he made eye contact with appellant as appellant pointed a
handgun at Rubio's vehicle. Magallan testified that, at one point, appellant was pointing
the gun directly at her. Additionally, appellant's vehicle pulled ahead of Rubio's vehicle and
appellant, while leaning out of the passenger's window, fired back at Rubio's vehicle
through the front windshield. After Rubio escaped and while trying to get his wife into his
father's apartment, appellant arrived. Appellant pointed the handgun at Rubio and
Magallan and pulled the trigger, but the gun did not fire. Appellant then grinned at them
and left. Further, the jury was shown pictures of Rubio's vehicle that demonstrated how
appellant would have been able to see into the vehicle. After hearing the evidence, the jury
found against the appellant. After reviewing all of the evidence in a neutral light, we cannot
say that the verdict of the jury was not rationally justified. Id. at 484.


 As we affirm the judgment of the trial court, we will address appellant's argument
that the evidence was factually insufficient to support the verdict and explain why we do not
find his argument persuasive. See Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App.
2003). Appellant contends that his intent on the night in question was to find someone
named "Randy," who had allegedly choked his younger brother, and punish him for his
transgression. According to appellant's theory, since his intent was to harm one person,
the evidence cannot support his conviction of attempting to cause the death of two different
individuals. While it is shown in the record that appellant may have initially thought he was
chasing and shooting at one person, a review of the record, as detailed above,
demonstrates that appellant had several occasions to view the occupants of the vehicle
and, thus, it is rational to conclude that appellant was aware that there were two people in
the car. The evidence, when viewed in a neutral light, supports the jury's implied finding
that appellant intended to cause the death of two people. Thus, we conclude that the
evidence was factually sufficient. Appellant's third issue is overruled.

 Because we have overruled appellant's issues, the judgment of the trial court is
affirmed.

 



 Mackey K. Hancock

 Justice



Do not publish. 
1. 
 



tion Locked="false" Priority="63" SemiHidden="false"
 UnhideWhenUsed="false" Name="Medium Shading 1 Accent 2"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









NO. 07-09-0076-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL C 

 

 JUNE 10, 2010



 

 



 

 

TERRILL E. CRUZ, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 

 



 

 FROM THE 100TH DISTRICT COURT OF COLLINGSWORTH
COUNTY;

 

NO. 2719; HONORABLE STUART MESSER, JUDGE



 

 



 

 

Before QUINN, C.J., HANCOCK and PIRTLE, JJ.

MEMORANDUM OPINION

            Appellant, Terrill E. Cruz, was
convicted by a jury of aggravated assault with a deadly weapon[1]
after which he was sentenced to twenty years confinement and fined ten thousand
dollars.  Appellant asserts the trial
court erred by: (1) denying his motion for a continuance; (2) overruling his objection
to the State's notice of its intent to introduce evidence of extraneous
offenses as punishment evidence ("State's Notice") because the trial
judge served as prosecuting attorney at the time the alleged offenses were
committed; (3) forcing Appellant to request the jury assess his punishment
because the trial court overruled his objection to the State's Notice; and (4)
overruling his objection to the State's Notice when most of the offenses were
arrests only and prosecution was barred by the applicable statutes of
limitation.  Appellant also asserts:  (5) because the trial judge did not disqualify
himself due to his prior service as a district attorney, the trial court lacked
jurisdiction to hear the matter; (6) the trial court erred in admitting
accomplice testimony when there was insufficient corroboration; (7) the trial
court erred in admitting the written statement of an accomplice in the absence
of sufficient corroboration; (8) the trial court erred in denying Appellant's
motion for a directed verdict; (9) there was no credible evidence Appellant
used or exhibited a deadly weapon; and (10) the evidence was legally and
factually insufficient to support the jury's verdict.  We affirm. 
  

Background

            On July 30, 2008, a Collingsworth County Grand Jury presented an
indictment charging that Appellant, on or about July 4, 2008, intentionally or
knowingly threatened Clarence Antonio Owens with imminent bodily injury by shooting
at Owens's residence with a deadly weapon, to-wit: an unknown caliber firearm.  At trial, Collingsworth County Sheriff Joe
Stuart testified that, on July 4, 2008, he was dispatched to 705 Dalhart Street
in Dalhart, Texas.  When he arrived, he
observed the front storm door was shattered and there were bullet holes in the
front of the residence. In his opinion, the bullet holes resulted from an unidentified
firearm, possibly a 9-millimeter, being fired at the home.  According to his testimony, the firearm used
was a deadly weapon.[2]

            Clarence Antonio Owens testified he
lived at 705 Dalhart Street.  On July 4,
he was watching television when he heard what he thought were firecrackers outside.  When he went to the front door, he saw a
green pickup truck.  Owens jumped into
his car and followed the pickup.  He
identified the pickup as belonging to Appellant and then drove home.  After returning home, he observed the same
pickup pulling up to his house a second time and witnessed another shooting.  His storm door was shattered and there were
bullet holes in his house.  He
subsequently gave a statement to the police indicating he had seen Appellant
drive by his house twice and he heard gunshots both times.

            Lynda
Ceballos, Owens's girlfriend, testified she was also at the house on July 4th
when she heard what she thought were firecrackers outside the house.  When she went to the front door, she observed
smoke and Appellant's green pickup at the stop sign across from their
house.  While standing out by the mailbox,
Ceballos could see Owens chasing the pickup and heard more shots.  While she and Owens were trying to decide
what action to take, Ceballos heard another shot and ran to the front door.  She observed the same pickup driving by with Appellant
hanging outside the passenger-side window firing at the house over the top of
the pickup.  She could not see who was
driving the pickup.  Shortly thereafter,
she called the police.

            Ceballos
further testified that after Appellant was freed on bail he came over to Owens's
house.  After she told Appellant to
leave, he told her he was sorry for shooting up the house and he admitted he
had been drinking that night.  

            Rene
Granados testified he was Appellants friend. 
In the early morning hours of July 4, he and Appellant were at his house
drinking beer.  They left the house to
cruise around and Appellant directed Granados to drive down Dalhart
Street.  While Appellant was sitting on
the pickup's passenger window, Granados heard something like gunshots coming
from the front of the pickup.  Granados
testified that he did not know Appellant was carrying a firearm and that after
this event he went home and went to bed.   


            Granados
also testified Appellant had approached him regarding his testimony before
trial.  Appellant told him he really
didn't need to be in court and "[i]t would be in his best interest that if
[he] was going to be [in court] today, he would try to eliminate me from being
[in court] today."  Granados
testified Appellant told him he was a "key witness."  Granados also testified he gave a written
statement to the police wherein he stated that, as he and Appellant drove by
Owens's house, Appellant "started unloading a pistol at Antonio's house."

Thereafter, the jury convicted
Appellant of aggravated assault with a deadly weapon and sentenced him to
twenty years confinement and assessed a ten thousand dollar fine.  This appeal followed.




Discussion

            I.          Motion for Continuance

            Under
the Texas Code of Criminal Procedure, criminal actions may be continued
"upon sufficient cause shown; which cause shall be fully set forth in the
motion."  Tex.
Code Crim. Proc. Ann. art. 29.03 (Vernon 2006).  Motions to continue rest within the trial
court's discretion; Gallo v. State,
239 S.W.3d 757, 764 (Tex.Crim.App. 2007), and, on appeal, a defendant must
demonstrate that his defense was "actually prejudiced" by the court's
ruling.  Janecka v. State, 937 S.W.2d 456, 468 (Tex.Crim.App. 1996), cert. denied, 522 U.S. 825, 118 S.Ct.
86, 139 L.Ed.2d 43 (1997) (citing Heiselbetz
v. State, 906 S.W.2d 500, 511 (Tex.Crim.App. 1995)).   

            Appellant filed a motion to continue
a December 29th trial date.  In his
motion, he asserted trial of his case during the Christmas-New Year's holiday
season would cause him prejudice because jurors would be "greatly
inconvenienced, will not want to serve during that holiday period, and will be
likely to hold Defendant responsible for such inconvenience."  Appellant's claimed error must fail because
his motion is premised on unsubstantiated assumptions and shows no actual prejudice.[3]  Accordingly, the trial court did not abuse
its discretion by denying Appellant's motion for continuance.  Appellant's first point of error is
overruled.

II.         State's
Notice of Intent to Introduce Evidence of Extraneous                                           Offenses

            A.
       Preservation of Error

            In points of error two, three, and four, Appellant asserts the trial
court erred by overruling his objection to the State's Notice of Intent to
Introduce Evidence of Extraneous Offenses, Punishment Evidence and/or Prior
Conviction Information filed December 19, 2008 ("State's Notice").  Appellant contends that during a pretrial
hearing the trial court denied his objection to the State's Notice.  A review of the record belies this
contention.  What the record does reflect
is that the court agreed with Appellant's objection as to the guilt/innocence
phase of the trial and then cautioned the prosecutor to approach the bench
prior to the introduction of any such evidence during the punishment
phase.  

            Rule
33.1 of the Texas Rules of Appellate Procedure governs preservation of error,
and states, in relevant part:

(a) In General. As a prerequisite to presenting a complaint for
appellate review, the record must show that:

*   *   *

 (2)  the trial court:

(A)  ruled on the request, objection, or motion, either expressly
or implicitly; or 

(B)  refused to rule on the request, objection, or motion, and
the complaining party objected to the refusal.

            Here,
the record shows that Appellant never obtained an adverse ruling to his
objection.  Whether a particular
complaint is preserved for appeal depends on whether the complaining party
clearly conveyed to the trial judge the particular complaint, including the
precise and proper application of the law as well as the underlying rationale,
and obtained a ruling on that complaint. 
See Pena v. State, 285 S.W.3d 459, 464
(Tex.Crim.App. 2009).  Because the trial
court never denied Appellant's objection, points of error two through four
present nothing for review and are, therefore, overruled.  

            B.        Implied
Overruling of Appellant's Objection

            While we do not so find, to the extent that it might be argued that the
trial court implicitly overruled Appellant's objection to the State's Notice
during the pretrial hearing by cautioning the prosecution to approach the bench
prior to tendering such evidence, any such ruling would be nothing more than a
preliminary evidentiary ruling that preserves nothing for appeal.  Martinez
v. State, 98 S.W.3d 189, 193 (Tex.Crim.App. 2003) (summarize holding); Harnett v. State, 38 S.W.3d 650, 655
(Tex.App.--Austin 2000, pet ref'd).

III.        Jurisdiction - Judicial Disqualification

            By
his fifth point of error, Appellant contends that, because the trial judge was
disqualified on constitutional and statutory grounds, the trial court lacked
jurisdiction over Appellant's case. 
Appellant asserts the trial judge should have been disqualified because
he served as the District Attorney for the 100th District at the time when
Appellant's prior arrests, the subject of the State's Notice of Intent to
Introduce Evidence of Extraneous Offenses, occurred.  As a result, he asserts the trial court
lacked jurisdiction to hear his case.

            The applicable statute provides that
"[n]o Judge . . . shall sit in any case . . . where he has been of counsel
for the State or the accused."  See Tex. Code Crim. Proc.
Ann. art. 30.01 (Vernon 2006).  See
also Tex. Const. art. V, § 11.  These provisions have been interpreted as
mandatory, unwaivable, and jurisdictional. 
Gamez v. State,
737 S.W.2d 315, 318 (Tex.Crim.App. 1987).  However, for over a century the Court of
Criminal Appeals has consistently held that, as applied to former prosecutors,
a judge is disqualified only if the record affirmatively demonstrates that he
actively participated as a prosecutor in the very case he is presiding over as a judge.  See, e.g., id. at 319; Ex parte
Miller, 696 S.W.2d 908, 910 (Tex.Crim.App. 1985); Holifield v. State, 538 S.W.2d 123, 125 (Tex.Crim.App. 1976); Carter v. State, 496 S.W.2d 603, 604
(Tex.Crim.App. 1973); Utzman v. State,
32 Tex. Crim. 426, 24 S.W. 412, 412 (Tex.Crim.App. 1893).  Without more, the mere fact that a judge
served as a district attorney while an appellant's case was pending does not
disqualify the judge.  Gamez, 737 S.W.2d at 319-20; Hathorne v. State, 459 S.W.2d 826, 829
(Tex.Crim.App. 1970), cert. denied,
402 U.S. 914, 91 S.Ct. 1398, 28 L.Ed.2d 657 (1971).

            There
is no evidence Judge Messer participated as counsel in this case.  A former prosecutor is not disqualified from
presiding over a trial when a new offense is charged; Hathorne, 459 S.W.2d at 829-30, even where he personally prosecuted
the defendant on a prior felony conviction used by the State for enhancement
purposes.  Nevarez v. State, 832 S.W.2d 82, 88
(Tex.App.--Waco 1992, pet. ref'd); O'Dell
v. State, 651 S.W.2d 48, 50 (Tex.App.--Fort Worth 1983, pet. ref'd).  The most that can be said on this record is
that Judge Messer was district attorney at the time Appellant was arrested for
various offenses.  Accordingly,
Appellant's fifth point of error is overruled. 


IV.       Accomplice Evidence and Sufficiency of
the Evidence

            Appellant's points of error six,
seven, eight, nine, and ten essentially challenge the sufficiency of the evidence
in support of Appellant's conviction. 
Points of error six and seven challenging the sufficiency of the
accomplice witness corroboration assert the trial court erred in admitting the
testimony and written statement of Rene Granados, an accomplice as a matter of
law,[4]
because there was no credible evidence of independent corroboration as to
whether Appellant used or exhibited a firearm. 
Point of error eight contends the trial court erred in denying
Appellant's motion for directed verdict,[5]
while points of error nine and ten ask whether, in the absence of Granados's
accomplice testimony and written statement, there was legally and factually
sufficient evidence to support the jury's verdict.  




            A.  Standard of Review

            In assessing the legal sufficiency
of the evidence to support a criminal conviction, a reviewing court must
consider all the evidence in the light most favorable to the verdict and
determine whether, based on that evidence and reasonable inferences to be drawn
therefrom, a rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt.  Jackson v. Virginia, 443
U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Hooper v. State, 214 S.W.3d 9, 13 (Tex. 2007).  In our analysis, we must give deference to the
responsibility of the jury to fairly resolve conflicts in testimony, weigh the
evidence, and draw reasonable inferences from that evidence.  Id.

            B. 
Aggravated Assault with a Deadly Weapon 

            The
elements of aggravated assault with a deadly weapon as alleged in the
indictment are that a person:  (1)
intentionally and knowingly threatens another (2) with imminent bodily injury
and (3) uses a deadly weapon during the commission of the assault.  See Tex. Penal Code Ann. §§ 22.01 and 22.02(a) (Vernon
2003).  A firearm is a deadly weapon per se. 
Ex parte Huskins, 176
S.W.3d 818, 820 (Tex.Crim.App. 2005).  See
Tex. Penal Code Ann. § 1.07(a)(17)(A) (Vernon Supp.
2009).

            C. 
Accomplice Witness Rule and Legal Sufficiency

            Article 38.14 of the Code of Criminal
Procedure provides that a conviction cannot stand on accomplice testimony
unless there is evidence tending to connect the defendant to the offense.  Tex. Code Crim. Proc. Ann.
art. 38.14 (Vernon 2005).  This rule is a statutorily imposed review and
is not derived from federal or state constitutional principles that define
legal and factual sufficiency standards. 
Brown v. State, 270 S.W.3d
564, 568 (Tex.Crim.App. 2008), cert.
denied, ___ U.S. ___, 129 S.Ct. 2075, 173 L.Ed.2d 1139 (2009).

            Accordingly,
when evaluating the sufficiency of corroboration evidence under the
accomplice-witness rule, we eliminate the accomplice testimony from
consideration and then examine the remaining portions of the record to see if
there is any evidence that tends to connect the accused with the commission of
the crime.  Castillo v. State, 221 S.W.3d 689, 691 (Tex.Crim.App. 2007) (citing
Soloman v. State, 49 S.W.3d 356, 361
(Tex.Crim.App. 2001)).  To meet the
requirements of the rule, the corroborating evidence need not prove the defendant's
guilt beyond a reasonable doubt.  Brown, 270 S.W.3d at 568;
Trevino v. State, 991 S.W.2d 849, 851
(Tex.Crim.App. 1999).  Rather,
viewing the evidence in a light most favorable to the verdict; Brown, 270 S.W.3d at 568 (citing Gill v. State, 873 S.W.2d 45, 48
(Tex.Crim.App. 1994)), the non-accomplice evidence must simply link the accused
in some way to the commission of the crime and show that a rational factfinder
could conclude that the non-accomplice evidence "tends to connnect"
appellant to the offense; Simmons v.
State, 282 S.W.3d 504, 509 (Tex.Crim.App. 2009); Hernandez v. State, 939 S.W.2d 173, 178-79 (Tex.Crim.App. 1997), but
not necessarily to every element of the crime. 
Vasquez v.
State, 56 S.W.3d 46, 48 (Tex.Crim.App. 2001).  Moreover, there is no set amount of non-accomplice
corroboration evidence that is required for sufficiency purposes; "[e]ach
case must be judged on its own facts." 
Gill v. State, 873 S.W.2d 45,
48 (Tex.Crim.App. 1994).  

            At
trial, Sheriff Stuart testified that, when he arrived at Owens's residence, he
observed that the front storm door was shattered and there were bullet holes in
the front door and the house.  Owens
testified that, after he heard gunfire outside his house, he observed
Appellant's pickup and gave chase.  Owens
observed Appellant's pickup a second time at his house, and again heard
gunshots.  Both Stuart and Owens
confirmed that his storm door was shattered and there were bullet holes in his
house.

Ceballos, Owens's girlfriend, also testified
that, after she heard gunshots outside Owens's house the first time, she went
to the front door and observed Appellant's pickup.  She testified that, standing by the mailbox,
she also observed Owens give chase and heard more gunshots.  She further testified that, after she heard
shots outside the house a second time, she observed the same truck with Appellant
hanging outside the passenger-side window firing at the house over the top of
the truck.  Furthermore, according to her
testimony, when Appellant was freed on bail he came to Owens's house and
apologized for shooting up the house that night.[6]

            The
physical evidence of the bullet holes at Owens's house, Sheriff Stuart's
testimony, Owens's testimony, Ceballos's testimony, and Appellant's own
incriminating statement, all corroborate Granados's accomplice testimony that
he observed Appellant sitting on the pickup's passenger-side window, as they
drove past Owens's house, while he heard something like gunshots coming from
the front of the truck.  

            Taking
all the evidence together, including Granados's accomplice-witness testimony,
we find legally sufficient evidence from which a jury could reasonably infer
Appellant intentionally or knowingly threatened Owens with imminent bodily
injury while using and exhibiting a deadly weapon during the commission of an
assault.

            D. 
Factual Insufficiency

            When conducting a factual sufficiency
review, we examine all the evidence in a neutral light and determine whether
the trier of fact was rationally justified in finding guilt beyond a reasonable
doubt.  Roberts v. State, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007), cert. denied, 552 U.S. 920, 128 S.Ct.
282, 169 L.Ed.2d 206 (2007); Watson v.
State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006).  We give deference to the fact finder's
determination when supported by the record, and cannot reverse a conviction
unless we find some objective basis in the record demonstrating that the great
weight and preponderance of the evidence contradicts the verdict.  Watson,
204 S.W.3d at 417. 
The criminal verdict will be set aside "only if the evidence is so
weak that the verdict is clearly wrong and manifestly unjust, or the contrary
evidence so strong that the standard of proof beyond a reasonable doubt could
not have been met."  Garza v. State, 213
S.W.3d 338, 343 (Tex.Crim.App. 2007). 
In addition, the fact finder is entitled to judge the credibility of the
witnesses and may choose to believe all, or some, or none of the testimony
presented.  Chambers v. State, 805 S.W.2d 459, 461
(Tex.Crim.App. 1991).

            Appellant contends the State's
evidence is factually insufficient because: 
(1) the police did not recover any gun, bullets, or shell casings at the
crime scene; (2) the weapon could have been a BB gun, pellet gun, or fireworks;
(3) Owens's front door could have been damaged in other ways; (4) Granados did
not see a pistol; (5) Ceballos's testimony was contradictory and inconsistent;
and (6) Granados's testimony was not believable.  

            Regarding
Appellant's first four contentions, Sheriff Stuart testified there were three
to four bullet holes in the front of the house that, in his opinion, were made
by a firearm, possibly a 9-millimeter handgun, being fired at the house.[7]  Deputy Selfridge also testified to the
presence of bullet holes in the house and opined that the bullet hole in the
bottom of the glass storm door was consistent with a gunshot.  Deputy Gilbert corroborated the testimony of
Sheriff Stuart and Deputy Selfridge and photographed the bullet holes.  Although Granados did not see Appellant
firing a pistol, he did state that Appellant unloaded a pistol at Owens's
residence.  Owens himself testified he
heard gunshots during both drive-by shootings and identified Appellant's pickup
as the vehicle from which the shots were fired. 
Ceballos corroborated Owens account and further testified the gunshots
were coming from Appellant's pickup when Owens gave chase after the first
drive-by shooting and, during the second drive-by shooting, she saw Appellant
sitting atop the passenger-side window firing over the top of the pickup.  Granados testified that, as they drove by
Owens's house, Appellant was sitting on the passenger-side window as he heard
something like gunshots coming from the front of the truck.  Finally, after Appellant was released from
jail, he came to Owens's house and apologized for shooting up the house.  

            Based
upon this evidence, we cannot say that the absence of a gun, bullets, or shell
casings coupled with the possibility that
the door could have been damaged in other ways, makes the State's evidence so
weak that the verdict is clearly wrong or manifestly unjust.  Further, although some of the testimony may
have been contradictory or inconsistent, our evaluation of the evidence
"should not substantially intrude upon the jury's role as the sole judge
of the weight and credibility of witness testimony."  Jones
v. State, 944 S.W.2d 642, 648 (Tex.Crim.App. 1996), cert. denied, 522 U.S. 832, 118 S.Ct. 100, 39 L.Ed.2d 54
(1997).  See Washington v. State, 127 S.W.3d 197, 204 (Tex.App.--Houston
[1st Dist.] 2003, pet. dism'd). 
Accordingly, we find that the evidence in support of the jury's verdict
was factually sufficient.  Appellant's points
of error six through ten are overruled.

Conclusion

            The trial
courts judgment is affirmed.  

                                                                                                Patrick
A. Pirtle

                                                                                                      Justice  

    Do not
publish.











[1]See Tex. Penal Code Ann. § 22.02(a)
(Vernon 2003).





[2]Deputies
Bill Selfridge and Billy Gilbert corroborated Sheriff Stuart's testimony. 






[3]Prior
to trial, Appellant did not voir dire
prospective jurors on whether they were inconvenienced, wanted to serve during
the holiday season, or would hold Appellant responsible for any inconvenience. 






[4]During
trial, the trial judge and the parties agreed Granados was an accomplice as a
matter of law.





[5]A
complaint regarding a trial court's failure to grant a motion for directed
verdict is a challenge to the legal sufficiency of the State's evidence at
trial; Canales v. State, 98 S.W.3d
690, 693 (Tex.Crim.App. 2003); Williams
v. State, 937 S.W.2d 479, 482 (Tex.Crim.App. 1996), not factual
sufficiency.  See Long v. State, 137 S.W.3d 726, 736 (Tex.App.--Waco 2004, pet.
ref'd); Turner v. State, 101 S.W.3d
750, 761 (Tex.App.--Houston [1st Dist.] 2003, pet. ref'd).





[6]An
accused's confession alone can be used to supply the necessary corroboration
for an accomplice's testimony.  Jackson v. State, 516
S.W.2d 167, 171 (Tex.Crim.App. 1974); Rayburn
v. State, 362 S.W.2d 649, 650 (Tex.Crim.App. 1962); Mitchell v. State, 669 S.W.2d 349, 350 (Tex.App.--Houston [14th
Dist.] 1984, no pet.).  Because
the record reflects that Appellant's confession was voluntary; see Zuliani v. State, 903 S.W.2d 812,
825 (Tex.App.--Austin 1995, pet. ref'd), and proof of the confession does not
depend on accomplice testimony; Thompson
v. State, 54 S.W.3d 88, 94 (Tex.App.--Tyler 2000, pet. ref'd) (citing Farris v. State, 819 S.W.2d 490, 495
(Tex.Crim.App. 1990)), Appellant's incriminating statement may be used to
corroborate Granados's accomplice testimony. 
See Alonzo v. State, 591 S.W.2d 842, 844 (Tex.Crim.App. 1980).





[7]Sheriff
Stuart also testified that the bullets were imbedded so deep in the door that,
in order to remove them, the front door would have to be destroyed.