### FRANK UTZMAN v. THE STATE.

#### *No. 745. Decided November 18.*

1. **Constitutional Law — Disqualification of Judge.**—On a trial for murder, where it appeared that at the time the homicide was committed the trial judge was still holding the office of district attorney, though he had at a recent election been elected district judge, and that he had taken no steps to prosecute the case, but on the contrary, at the opening of the court, and to avoid disqualifying himself, had procured the appointment of the newly elected district attornay to attend the grand jury and discharge the duties of the office, and the latter prepared the indictment, and in two days from the opening of court the newly elected judge had also forwarded his resignation as district attorney to the Governor: *Held*, that he was not disqualified from trying the case, under section 11, article 5, of the Constitution, which provides, that no judge shall sit in any case where he shall have been of counsel in the case; nor under the provisions of articles 31 and 41, Code of Criminal Procedure, inhibiting district attorneys from appearing as counsel adversely to the State, in any case in which they may have appeared for the State.

2. **Evidence—Threats by Defendant— Insulting Conduct to Female.**—On a trial for murder, where the State was permitted to prove threats by defendant extending back two years prior to the homicide, growing out of a business disagreement, *held*, that it was error to refuse to permit defendant to prove in rebuttal, and in support of his theory of the case, that the killing was on account of insult to his wife; that deceased had made improper advances to his wife two years before the homicide, and which insults and advances were again renewed by deceased the evening before the homicide.

3. **Same — Defendant's Right to Proof upon His Theory or Defense.**—On a trial of a criminal case, a defendant has the right to prove by his witnesses his theory of the case, however improbable it may appear to the court.

**4. Fresh Provocation— Murder of First and Second Degrees.—** On a trial for murder, where there are two theories, to-wit, antecedent grudges on the one hand, and fresh provocation on the other, defendant has the right to show the fresh provocation if he can, in order that the jury may determine in connection with such fresh provocation, as between murder of the first and murder of the second degree.

**5. Same— Charge of Court— Weight of Evidence.—** On a trial for murder, where evidence is introduced of a fresh provocation, which, if believed by the jury, might reduce the killing to murder of the second degree, it is error for the court to refuse to charge upon murder of the second degree, and such refusal was tantamount to passing upon the weight of the evidence, and also to excluding from the jury the entire defense relied on.

APPEAL from the District Court of Brown.   Tried below before Hon. J. O. WOODWARD.

Appellant was indicted for killing W. J. Thurmond, by shooting him with a gun, and by shooting him with a pistol.

At the trial the appellant pleaded specially, that the district judge was disqualified from trying the case, because at the time of the alleged commission of the offense said judge was the district attorney of said district and county in which it was committed, and was holding said office at the term of court at which appellant was indicted.   This plea was overruled, and the facts connected therewith are fully stated in the opinion.   At the trial appellant was convicted of murder of the first degree, the penalty being a life term in the penitentiary.

It is not necessary to give a detailed statement of the facts proved. Defendant testified at the trial, and stated that he had killed deceased. That in going from the town of Brownwood, in company with several other parties, they met the deceased, in a buggy, going to town.   That after passing him a short distance, he exchanged horses with one of his companions and he and Griff Fuller started back in pursuit of deceased. That they came up with or near him when within three miles of town. Deceased was travelling along in his buggy at a slow horse trot.   The back curtain of the buggy was down.   That deceased did not see him and Fuller.   That he fired several times at deceased through the back curtain of the buggy, shooting him in the back, and that deceased fell from the buggy into the road, dead.   He said, that on the day before the killing he was told by Giles Livingston that Thurmond, the deceased, had again been making improper and insulting proposals to his, defendant's, wife.   That he then made up his mind to kill him; intended to kill him that evening if he met him; and that if he did not meet him, he intended to hunt him and kill him.   He said, " The reason I rode up behind him and shot him in the back was, that I did not intend to give him a chance for his life.   I did not propose to run any risk of my own life.   I thought I did right in killing Thurmond at the time I killed him, and think so yet."

The theory of the State was, that the killing was on account of trouble between the parties over business transactions occurring some two years before, and numerous threats by defendant against the life of the deceased, made at different times within two years before the killing, were proved.

The excluded testimony in behalf of defendant, which is mentioned in the opinion, was substantially, as shown by his bills of exception, as follows:

Defendant offered to prove by his wife that Thurmond had tried to have carnal intercourse with her about two years before the killing, while her husband was a tenant on Thurmond's farm, near Brownwood. That soon thereafter Thurmond proposed to pay defendant for the work he had done, and to cancel his lease; that she prevailed upon defendant to accept said proposition, assigning as her reason that Thurmond was a quarrelsome and overbearing man; that he had recently killed a man, and that trouble with him would probably lead to serious results; but that her true reason was on account of the insult offered to her by Thurmond, which she did not tell her husband for fear he would kill Thurmond. That they moved back to Hamilton County, where they had formerly lived, soon after which she told the defendant of the conduct of Thurmond; that thereupon the defendant became wild and frenzied, and that she, with much difficulty and great entreaty, prevailed upon him not to kill Thurmond, by reminding defendant of their poverty and of Thurmond's wealth, and that she had married defendant against the will of her mother, and for his sake had left her people; that he would be put in jail, and was unable to pay attorneys to defend him, and might be sent to the penitentiary.

He offered to prove by William Hester, his elder half-brother, who had raised him, that defendant talked to witness about the insults offered by Thurmond to his wife soon after defendant moved from Thurmond's place to Hamilton County, stating to witness that he had just learned these facts from his wife, and while talking about it he became very much agitated and shed tears, and in the opinion of the witness, was at that time incapable of reasoning as to the right or wrong of killing Thurmond.

*Jenkins & McCartney* and *A. S. Fisher*, for appellant.—1. The court erred in not sustaining the defendant's objection to the Hon. J. O. Woodward presiding as judge over the trial of this cause. because of his disqualification by reason of his having been counsel in this case prior to the time of the trial, in this, viz., that at the time the homicide was committed, at the time of the examining trial by the justice of the peace of the defendant for said homicide, at the time of the convening of the District Court of Brown County, at the time of the examination of the matter by the grand jury, and the presentation of the indictment by the

grand jury into open court, the said Hon. J. O. Woodward was the district attorney of the Thirty-fifth Judicial District, including the county of Brown. Const., art. 5, sec. 11; Rev. Stats., art. 1090; Code Crim Proc., art. 569; Johnson v. The State, 16 S. W. Rep., 418; The State v. Burke, 18 S. W. Rep., 662; Abrams v. The State, 31 Texas Crim. Rep., 449; Bashford v. The State, 24 Mich., 244.

2. The previous insults to appellant's wife were admissible upon the issue of the degree of homicide, to show that the threats on the part of appellant, proven by the State, were made on account of said insults, and not on account of a business difficulty.

3. Any evidence that would show that appellant had reasonable cause to be excited, troubled of mind, or in any wise mentally distracted, as to render it improbable that in perpetrating the homicide he acted with a cool, sedate, and deliberate mind, is admissible in a trial for murder. The court erred in sustaining the objections of the State to the testimony of William Hester, offered by defense, as shown by bill of exceptions.

4. To ascertain the state of the mind at a particular period, one may inquire into its condition before in relation to the particular subject. Penal Code, art. 39; Webb v. The State, 5 Texas Cr. App., 608, 609; Warren v. The State, 9 Texas Cr. App., 633.

5. The court erred in omitting to charge the jury upon murder in the second degree, in this: There being evidence of former grudges, antecedent menaces, and other circumstances going to show a feeling of hostility on the part of Utzman toward Thurmond prior to the time of the insulting conduct of Thurmond towards Utzman's wife about three weeks before the day of the homicide, and there being evidence that the new provocation was communicated to Utzman on the day of and a few hours before the killing, by Giles Livingston, which new provocation may or may not have aroused in the mind of Utzman such a passion as to render his mind incapable of that cool, sedate, and deliberate condition necessary to make the killing upon express malice, yet not sufficient to reduce the homicide to manslaughter, and this condition of the mind being a question of fact for the jury, the court ought to have instructed the jury more fully upon malice, and to have charged the jury upon murder in the second degree.

Where the insult is of such a nature that the mind can not dwell calmly on it, and it is thus rendered doubtful if the killing was with a cool and sedate mind, the law of murder in the second degree should be given in charge to the jury. Ex Parte Jones, 31 Texas Cr. Rep., 422; Burkhart v. The State, 18 Texas Cr. App., 621; Hill v. The State, 5 Texas Cr. App., 8; Eanes v. The State, 10 Texas Cr. App., 447, 448; Miles v. The State, 15 Texas Cr. App., 170.

*R. L. Henry*, Assistant Attorney-General, for the State.

SIMKINS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at imprisonment for life.

1. We do not think that the district judge was disqualified from sitting in this case. It is true he was district attorney at the time the homicide was committed, but being elected district judge at the November election, and to avoid disqualifying himself, he declined to attend the sittings of the grand jury, and had the district attorney elect appointed by the court, who entered on the discharge of such duties on the opening of the court on the 5th of December, and prepared the indictment in this case, which was presented on the 9th of December. Two days after the opening of the court, the district attorney forwarded his resignation to Austin.

It thus appears, that in the case at bar, the Hon. J. O. Woodward, though in office as district attorney when the offense was committed, had nothing to do with the prosecution of said case, either in examining the witnesses or preparing complaint or indictment, and resigned his position before an indictment was presented.

Article 31, Code of Criminal Procedure, declares, that a district attorney, after his term of office expires, shall not be counsel against the State in a case in which he *appeared* for the State, and to the same effect is article 41, Code of Criminal Procedure. This may be taken as a legislative construction of the constitutional clause disqualifying a judge, " where he shall have been of counsel in the case." Const., art. 5, sec. 11.

2. We think the court erred in refusing to permit Mrs. Utzman to testify as to the improper advances made by Thurmond two years previous to homicide, and William Hester's statement of appellant's declarations to him. The State was permitted to introduce proof of threats by appellant, extending back for two years prior to the homicide, and to show that the reason given was a business disagreement. To meet this strongly inculpatory evidence, appellant sought to prove the true cause was the insult offered to his wife, and not a business misunderstanding, and that he had yielded to the tears and entreaties of his wife in not attacking deceased at once. That when he heard of the fresh insult, on the evening of the homicide, he became so aroused that he determined to kill Thurmond on sight, and went out to meet and kill him. Such was the theory of the defense offered in this case—and he had a right to prove it by his witnesses, however improbable it might appear to the court. For if there was in fact a fresh provocation given, it was a question for the jury whether the design to kill was to be attributed to that or some previous grudge; and if the design to kill was formed in consequence of the fresh provocation, in a mind incapable of cool reflection, it might not be greater than murder in the second degree. Of course, if the jury believed that there was no fresh provocation, or that the homicide was deliberately and coolly consummated, it would be murder in the first degree.

3. For the reasons above stated, the court erred in not submitting to

the jury a charge on murder in the second degree.    Let us concede that the evidence conclusively demonstrates the guilt of appellant, still when the court refused to charge on murder in the second degree, he excluded the entire defense from the consideration of the jury, and thereby passed upon its weight.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.