Walter Strahan v. The State.

No. 5816.   Decided May 12, 1920.

1.—Murder—Special District Judge—Statutes Construed.

Where, upon appeal from a conviction of murder, it appeared from the record that the presiding judge was disqualified, and that the special judge was not in fact a district judge but a practicing attorney selected by the bar to preside specially over that term of the court, and excluded the fact that he was selected by the parties, he could not sit as a judge in the instant case, and the question could be raised for the first time on appeal.

2.—Same—Evidence—Suspension of Sentence—General Reputation.

Where, upon trial of murder, testimony as to the indebtedness of the defendant to the witness and their altercation about this matter, and defendant's declaration during a casual conversation that there was no such thing as honor and that any man would swear a lie if it was to his own interest, was inadmissible either under the plea of suspended sentence or an attack upon defendant's general reputation.

3.—Same—Evidence—Defendant's Declarations.

Upon trial of murder, testimony as to a conversation had between witness and the defendant in which the latter accused the former of stealing his corn, etc., should not have been admitted.

Appeal from the District Court of Polk.   Tried below before the Honorable Clark C. Wren, Special Judge.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Woods, Barkley & King* and *Murphy & Campbell*, for appellant.— On question of special judge: Oates v. State, 121 S. W. Rep., 370; Summerlin v. State, 153 S. W. Rep., 152; Cohn v. Saenz, 194 S. W. Rep., 685.

*Alvin M. Owsley*, Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder and the jury assessed his punishment at ten years in the penitentiary. The name of the deceased was Burch.

The record shows that Hon. C. C. Wren was elected special judge to preside over the term of court at which appellant was convicted. The recited reason for this was that Judge J. L. Manry, the regular district judge, was disqualified in many cases then on the docket. This case is one of those in which Judge Manry was disqualified. This seems not to be questioned. When the indictment was returned Judge Manry was district attorney of the district, and, after the death of Judge Hightower, was appointed as his successor. These facts, of course, are judicially known to this court. The question was not raised below but it is suggested for the first time on appeal that Judge Wren could not sit as a judge and that his acts are of no validity. We are inclined to believe this posision is well taken. The Constitution, Article 5, Section 11, provides, among other things, that no judge shall sit in any case wherein he shall have been of counsel. It further provides that when a judge of the District Court is disqualified by any of the causes above stated, the parties may, by consent, appoint a proper person to try said case; or, upon their failure so to do, a competent person may be appointed to try the same in the county where it is pending, in such manner as may be prescribed by law.

The Legislature has enacted provisions with reference to this phase of the Constitution. Article 1676, Rev. Civ. Stats., provides that: "Whenever any case or cases, civil or criminal, are pending, in which the district judge is disqualified from trying the same, no change of venue shall be made necessary thereby; but the judge presiding shall immediately certify that fact to the Governor, whereupon, the Governor shall designate some district judge in an adjoining district to exchange and try such case or cases, and the Governor shall also notify both of said judges of such order; and it shall be the duty of said judges to exchange districts for the purpose of disposing of such case or cases, and, in case of sickness or other reasons rendering it impossible to exchange, then the parties or their counsel shall have the right to select or agree upon an attorney of the court for the trial thereof."

The selection of Judge Wren was by a vote of the bar, and he was selected as special judge to try all cases in which Judge Manry was disqualified. In other words, the bar held an election and elected Judge Wren to preside over the court under the circumstances stated. This is the only way in which he became the judge to try any case at that term of the court. So it will be seen that it is not brought within the provisions of this statute. He was not agreed upon by the attorneys in the case. He was elected by a general vote of all the legal fraternity present. Art. 1677 of the Rev. Civ. Stats., provides:

"Whenever a special judge is agreed upon by the parties for the trial of any particular cause, as above provided, the clerk shall enter

in the minutes of the court, as a part of the proceedings in such cause, a record showing: 1. That the judge of the court was disqualified to try the cause; and 2. That such special judge (naming him) was, by consent, agreed upon by the parties to try the cause; and 3. That the oath prescribed by law has been duly administered to such special judge.''

Article 1678, Rev. Civ. Stats., provides that whenever the regular judge shall fail to appear at the term of court, or under other circumstances mentioned in the statute, then the practicing attorneys of such court present may proceed to elect from among their number a special judge of said court. Judge Wren was elected by the attorneys present. There is no evidence of the absence or inability of Judge Manry to preside over his court. The only assigned reason for the election of Judge Wren by members of the bar was the fact that Judge Manry was disqualified in many cases. So from any viewpoint of it we are of opinion that Judge Wren was not selected to try this case under any provision of the Constitution or of the statute. The Constitution and the statute both provide that parties may agree under certain circumstances to try the case. Appellant's case fell within that rule. Judge Manry being disqualified, the parties could agree upon a trial judge. The record excludes the idea that Judge Wren presided over the court at the instance of the Governor under any provision authorizing the governor to appoint him or to have him exchange with another judge. Judge Wren was not district judge of any court, but was a practicing attorney selected by the bar to preside specially over that term of the court. The record also excludes the idea that he was selected by the parties. It shows that he was elected generally by the bar, which is only authorized within the provisions of Article 1678, *supra*. That statute does not apply in cases of this character. See Oates v. State, 56 Texas Crim. Rep., 571; Summerlin v. State, 69 Texas Crim. Rep., 275; Constitution, Art. 5, Sec. 11; Revised Civil Statutes, Arts. 1676, 1677, 1678. We are of opinion, therefore, that Judge Wren was not authorized to try this case.

A bill of exceptions recites that while John D. McLeod was testifying the following occurred: ''At the end of the year whenever we wanted to settle, as I told you his father was gone away, the settlement was between he (defendant) and I. He was going to settle the rent with corn, and he settled up the rent all but $15. There was $15 —he rented a mule in connection with the farm, and he was willing to pay all but the mule rent, but he would not pay that. We had some pretty sharp words about it, and he said I had got all I ever would get, never would pay a cent of it. I did not get a cent of it. Up to that time we had been very friendly; after that we never had much dealing with each other. We had a conversation a few times after that, but not as intimate as we had been. I had a conversation with him before that. Soon after ne came to my house some time in the spring. Mr. Singletary, myself and he was around a log or something one

rainy evening and we got to talking about men's honor, and he says 'this thing you call honor. there's no such thing as honor, for any man will swear a lie if it is to his own interest.' ''. Various objections were urged to all this, among others, that it was an attempt to impeach the general reputation of the defendant by special acts, and that the testimony of the witness was not confined to whether or not he was acquainted with the general reputation of the defendant, and was not admissible for any purpose, but was calculated to prejudice the minds of the jury against him. These matters were all overruled and the testimony permitted to go to the jury. The judge signs this bill with the statement that the jury was instructed to consider such evidence only in determining whether or not they would recommend a suspended sentence of defendant in the event they convicted him of the offense of manslaughter, and as so modified the bill is approved. This testimony was not admissible, even under the broad latitude which seems to have been laid down by some of the decisions in regard to impugning defendant's reputation or character when suspended sentence is requested. With reference to the $15 transaction, it was a matter growing out of a contract between the parties, the equities of which were not shown, nor ought they to be permitted in a case of this sort. He may have been right or wrong in refusing to pay the $15 about which the witness testified, but it is not that character of evidence that would justify its being introduced as an attack upon defendant's reputation under the suspended sentence plea. Nor was the statement admissible with reference to impugning defendant's general idea of the term honor. None of this testimony involved particular acts of character recognized by the statute in attacking appellant's reputation. He was not charged with any offense in this matter either felony or misdemeanor. It certainly was not admissible under the broad expression of general reputation. We are of opinion this testimony should not have been permitted to go to the jury.

Another bill recites that while B. L. Rice was testifying he stated he had had a conversation with defendant about Mr. McLeod in which he stated that he (defendant) accused him (McLeod) of stealing his corn; that he said he went out there two or three times to kill him, Mr. McLeod. ''Q. Did he say whether he came or not? A. He did not come.'' This was admitted over various objections for the reason, as stated by the judge, that appellant had asked for a suspended sentence. For reasons already stated in regard to the other bill this testimony was inadmissible.

For the reasons indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*