89 S.W.3d 814 (2002)
In the Matter of K.E.M., Juvenile.
No. 13-01-865-CV.
Court of Appeals of Texas, Corpus Christi-Edinburg.
October 24, 2002.
*816 Scott M. Ellison, Law Offices of Scott M. Ellison, Corpus Christi, for Appellant.
Deanie M. King, Assistant County Attorney, Juvenile Prosecutor, Melissa Madrigal, Assistant District Attorney, Corpus Christi, for Appellee.
Before Chief Justice VALDEZ and Justices RODRIGUEZ and CASTILLO.

OPINION
Opinion by Justice CASTILLO.
Appellant K.E.M. appeals denial of his application for writ of habeas corpus in which he sought release from an indeterminate commitment for attempted sexual assault, not to exceed appellant's twenty-first birthday, to the Texas Youth Commission. Although not raised as an issue on appeal in appellant's brief, we find that the record presents a serious question of whether the juvenile court judge who presided over the habeas corpus proceeding was disqualified by reason of having served as counsel for the State in the underlying juvenile adjudication in his capacity as Nueces County Attorney.[1] We reverse and remand.
*817 We first examine the record, then discuss judicial disqualification as a jurisdictional issue and the circumstances that require our consideration of unassigned error. We find no direct precedent to guide our analysis of the standards we must apply to judicial disqualification in a juvenile adjudication. Hence, we survey the substantive law of judicial disqualification by reference to the available jurisprudence suggested by four sources of judicial disqualification standards: (1) Article V, Section 11 of the Constitution of the State of Texas;[2] (2) Rule 18b(1)(a) of the Texas Rules of Civil Procedure;[3] (3) Article 30.01 of the Texas Code of Criminal Procedure;[4] and (4) Canon 2A of the Texas Code of Judicial Conduct.[5]

I. THE RECORD
The court at issue is a statutory county court with jurisdiction over juvenile proceedings under title 3 of the family code. TEX. GOV'T CODE ANN. § 25.1802(r)(1) (Vernon Supp.2002). We take judicial notice that the current presiding judge of that court took the bench on October 1, 1999 and that before then he had held the office of Nueces County Attorney since 1993.[6]
Texas law defines the duties of county attorneys:
The county attorney shall attend the terms of court in his county below the grade of district court, and shall represent the State in all criminal cases under examination or prosecution in said county; and in the absence of the district attorney he shall represent the State alone and, when requested, shall aid the district attorney in the prosecution of any case in behalf of the State in the district court. He shall represent the State in cases he has prosecuted which are appealed.
TEX.CODE.CRIM. PROC. ANN. art. 2.02 (Vernon Supp.2002).[7]
Accordingly, the presiding judge of the juvenile court below was representing the State of Texas in his capacity as Nueces County Attorney on October 28, 1997, the date appellant's mother reported to authorities her suspicions that appellant had sexually assaulted a younger brother. Child Protective Services and the Corpus Christi Police Department initiated an investigation. The State of Texas filed its "Original Petition for Adjudication" against appellant, at the time thirteen years old, on December 11, 1997. The *818 signature block on the original petition filed by the State of Texas shows the juvenile court judge's printed name and identification as Nueces County Attorney and is signed by an assistant county attorney. On December 18, 1997 and again on December 22, 1997, that same assistant county attorney signed a "Notice of Setting" as "Attorney for State." She also signed the "State's First Amended Petition for Adjudication" filed on January 13, 1998, in a signature block identical to the one printed on the original petition. The signature of the then-Nueces County Attorney does not appear on any documents in the record.
On January 14, 1998, the State and appellant reached a plea bargain agreement, and appellant pled "true" to attempted sexual assault. On that same date, the then-presiding judge approved and adopted the recommendations of a juvenile referee judge and committed appellant "to the Texas Youth Commission for an indeterminate period of time not to exceed the time when he will be 21 years of age."
Thus, during the pendency of appellant's juvenile adjudication proceedings, from initiation of the investigation in October of 1997 through adjudication in January of 1998, the presiding judge of the juvenile court below served as the Nueces County Attorney. By October 18, 1999, when appellant filed an initial application for writ of habeas corpus, the former Nueces County Attorney was the presiding judge of the juvenile court in which appellant filed the application. The juvenile court judge denied the first application without a hearing on November 16, 1999. On January 14, 2000, the judge signed an order denying appellant's second application for writ of habeas corpus, filed on December 9, 1999, also without a hearing. On January 14, 2000, a visiting judge, sitting for a Nueces County district court, denied appellant's third application for writ of habeas corpus.[8] On February 7, 2001, appellant filed a fourth application for writ of habeas corpus, again in the juvenile court below in which the judge presides. On August 3, 2001, the judge held an evidentiary hearing on the fourth application and on September 11, 2001, issued "Findings of Fact and Conclusions of Law and Order" denying appellant's fourth application.[9] This appeal ensued.

II. JUDICIAL DISQUALIFICATION AS A JURISDICTIONAL ISSUE
In both criminal and civil cases, a judge's disqualification arising from a constitutional or statutory provision "affects jurisdiction" and renders the proceeding a nullity. Davis v. State, 956 S.W.2d 555, 558 (Tex.Crim.App.1997); Lopez v. State, 57 S.W.3d 625, 627-28 (Tex.App.-Corpus Christi 2001, pet. ref'd); see Buckholts Indep. Sch. Dist. v. Glaser, 632 S.W.2d 146, 148 (Tex.1982) (citations omitted) ("The constitutional prohibition has long been held to make any order involving judicial discretion by a constitutionally disqualified judge `absolutely void,' `a nullity.'"). It follows that a criminal conviction is void if the judge was constitutionally or statutorily disqualified. Ex parte Vivier, 699 S.W.2d 862, 863-64 (Tex.Crim.App.1985) (per curiam); Lopez, 57 S.W.3d at 628.
Further, even if the parties consent, there can be no waiver of constitutional *819 or statutory disqualification provisions. Ex parte Vivier, 699 S.W.2d at 863; Lee v. State, 555 S.W.2d 121, 124 (Tex.Crim.App.1977); see Buckholts, 632 S.W.2d at 148 ("[D]isregard of the constitutional disqualification is error that can be raised at any point in the proceeding"). Therefore, we consider the issue of judicial disqualification in this case as unassigned error.

III. UNASSIGNED ERROR
The court of criminal appeals has considered as unassigned error the question of a judge's disqualification to preside over the trial of a criminal defendant because of the judge's participation in the prosecution of the case as counsel for the State. Lee, 555 S.W.2d at 122; see Leal v. State, 626 S.W.2d 866, 867 (Tex.App.-Corpus Christi 1981, no pet.) (reversing and remanding on an unassigned error in a fatal variance between the indictment and the charge). Moreover, an appellate court may raise a judicial disqualification issue on its own motion. McElwee v. McElwee, 911 S.W.2d 182, 186 (Tex.App.-Houston [1st Dist.] 1995, writ denied). Thus, on this Court's own motion, we consider the question of the juvenile court judge's disqualification.
In view of our disposition of this unassigned error, it is not necessary that we address appellant's issue on appeal that the juvenile court abused its discretion in holding that appellant's proof of recantation failed to demonstrate by clear and convincing evidence that appellant was entitled to relief. See Gonzalez v. State, 588 S.W.2d 574, 575 (Tex.Crim.App. [Panel Op.] 1979) ("[W]e find an unassigned error which should be reviewed in the interest of justice that is dispositive of the appeal and, accordingly, do not directly address the ground of error that is advanced.").
The question we face is whether the juvenile court judge who presided over the habeas corpus proceeding in this case was disqualified under Texas law by reason of having held the office of Nueces County Attorney when the underlying juvenile case was investigated and prosecuted by that office. To answer this question, we survey the substantive law of judicial disqualification.

IV. THE LAW OF JUDICIAL DISQUALIFICATION

A. The Policy Considerations
All judges have the duty to sit and decide matters before them unless a basis exists for disqualification or recusal.[10]Monroe v. Blackmon, 946 S.W.2d 533, 536 (Tex.App.-Corpus Christi 1997, orig. proceeding) (citing Rogers v. Bradley, 909 S.W.2d 872, 879 (Tex.1995) (Enoch, J., concurring)). Judges have as much of an obligation not to step down from a case when there is no reason to do so as they have to do so when there is a reason. Rogers, 909 S.W.2d at 879 (Enoch, J., concurring); Kirby v. Chapman, 917 S.W.2d 902, 909 (Tex.App.-Fort Worth 1996, no writ). However, a judge also must avoid the appearance of impropriety. TEX.CODE *820 JUD. CONDUCT, Canon 2, reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G app. B (Vernon 1998). In the context of judicial disqualification, "avoiding the appearance of impropriety" means that the judge must comply with the law applicable to judicial disqualification and act "in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Id.

B. Article V, Section 11 of the Texas Constitution
Our starting point for analyzing the standards for judicial disqualification in both criminal and civil cases is the Texas Constitution:
No judge shall sit in any case wherein the judge may be interested, or where either of the parties may be connected with the judge, either by affinity or consanguinity, within such a degree as may be prescribed by law, or when the judge shall have been counsel in the case.
TEX. CONST. art. V, § 11; see Ex parte Washington, 442 S.W.2d 391, 392-93 (Tex.Crim.App.1969) (holding that a criminal court judge is constitutionally disqualified if the judge is related to a party or prosecuted the same case before); see also Zarate v. Sun Operating Ltd., Inc., 40 S.W.3d 617, 623 (Tex.App.San Antonio 2001, pet. denied) (holding that a judge who had represented a receiver in the case had not been "counsel in the case" because the receiver was not a party to the lawsuit and had no interest in the litigation).
The "counsel in the case" requirement in article V, section 11 as applied to criminal cases came under early scrutiny. Johnson v. State, 29 Tex.App. 526, 526-27, 16 S.W. 418, 418 (1891). The court of appeals disqualified a district judge who, while acting as a private prosecuting attorney, prosecuted the defendant in a simple assault case before a justice of the peace. Id. The same defendant was then indicted for felony aggravated assault, and the case was filed in the district court in which the former prosecutor was presiding judge. Id. In disqualifying the judge, the Johnson court focused on the fact that the aggravated assault case arose out of the same facts as the simple assault case handled by the former prosecutor. Id.
Further, Texas law long has held that the mere fact that a trial judge had been an assistant prosecutor at the time the alleged offenses arose or were filed does not mean that the former assistant prosecutor had acted as "counsel in the case." Prince v. State, 158 Tex.Crim. 65, 252 S.W.2d 945, 946 (Tex.Crim.App.1952). If, on the other hand, the judge participated in any manner in the preparation or investigation of the case as an assistant prosecutor, the judge would be considered "counsel in the case." Id.
Thus, as applied in criminal cases, the prohibition found in article V, section 11 against a judge hearing a case in which the judge had acted as a prosecutor requires that the judge had participated in the very case at issue. The court of criminal appeals underscored this requirement in Holifield v. State, 538 S.W.2d 123, 125 (Tex.Crim.App.1976). The Holifield court noted that the record in the case showed that the judge had been the district attorney in Randall County, where two cases were pending against appellant, one in district court and another in county court. Id. At the time of the trial in Potter County of the case under appeal, the Randall County district court case had been dismissed, and the county court case was still pending. Id.
The evidence in Holifield showed that the judge had not participated in the prosecution of the Potter County case. Id. Reasoning that the judge's participation in the Randall County prosecutions did not *821 make the judge "counsel in the case" with regard to the Potter County prosecution, the court held that the judge was not subject to disqualification under either article V, section 11 or the criminal procedure rule then in effect. Tex. Const. art. V, § 11; Holifield, 538 S.W.2d at 125.
In addition to interpreting the "counsel in the case" requirement as applicable to any case that arises out of the same set of operative facts, the court of criminal appeals in another early case read into article V, section 11 an implicit temporal component. Tex. Const. art. V, § 11; Utzman v. State, 32 Tex.Crim. 426, 24 S.W. 412, 412 (1893). The court noted that the judge was in office as district attorney when the alleged offense was committed but had nothing to do with the prosecution of the case, either in examining the witnesses or preparing the complaint or indictment, because he had resigned his position before an indictment was presented. Id.
We turn next to the judicial disqualification standards in the rules of civil procedure.

C. The Texas Rules of Civil Procedure
Rule 18b of the rules of civil procedure recites in relevant part the following grounds for disqualification of judges:
Judges shall disqualify themselves in all proceedings in which:
(a) they have served as a lawyer in the matter in controversy, or a lawyer with whom they previously practiced law served during such association as a lawyer concerning the matter....
TEX.R. CIV. P. 18b(1)(a). The Texas Family Code governs juvenile proceedings and requires that they be conducted under the rules of civil procedure, except as to discovery, and under the rules of evidence applicable to criminal proceedings. TEX. FAM.CODE § 51.17 (Vernon 2002); In re R.J.H., 79 S.W.3d 1, 6 (Tex.2002).[11]
The provisions of rule 18b apply an objective standard and are mandatory. See Monroe, 946 S.W.2d at 536 ("[W]hen there exists a reasonable questionbased on objective factsas to a judge's impartiality, recusal is mandated."); see also Rogers, 909 S.W.2d at 879 (Enoch, J., concurring) (suggesting that the proper inquiry under the recusal provisions of rule 18b(2)(a) is whether a reasonable member of the public at large, knowing all the facts in the public domain concerning the judge's conduct, would have a reasonable doubt that the judge is actually impartial).
Moreover, by its own terms, rule 18b(1)(a) applies not only to a judge who personally "served as a lawyer in the matter in controversy" but also to a judge who "practiced law" with another lawyer who "served during such association as a lawyer concerning the matter." Tex.R. Civ. P. 18b(1)(a). Accordingly, rule 18b(1)(a) as applied in civil cases "recognizes that a judge is vicariously disqualified under the Constitution as having been `counsel in the case' if a lawyer with whom the judge previously practiced law served as counsel to a party concerning the matter during their association." In re O'Connor, 45 Sup.Ct. J. 970, 2002 WL 1379069, ___ S.W.3d ___ (June 27, 2002) (orig.proceeding) (per curiam) (not yet released for publication in the permanent law reports).
*822 The supreme court in In re O'Connor held that a judge whose law partner had represented one of the parties in a divorce case was constitutionally disqualified under rule 18b(1)(a) from presiding over a later modification proceeding. Tex. Const. art. V, § 11; Tex.R. Civ. P. 18b(1)(a); In re O'Connor, 45 Sup.Ct. J. 970, 2002 WL 1379069, ___ S.W.3d ___. Other jurisdictions also apply this knowledge-by-association imputation standard to judicial disqualifications. For example, we note that the general federal judicial disqualification statute requires that any judge of the United States "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (2002). More specifically, however, section 455(b) requires that the judge "shall also disqualify himself in any proceeding where "he has served in governmental employment and in such capacity participated as counsel, adviser or material witness or expressed an opinion concerning the merits of the particular case in controversy." 28 U.S.C. § 455(b)(3) (2002).[12]
Despite the apparent limitation of this language in section 455(b)(3), the Ninth Circuit noted, in a case involving a former United States Attorney for Arizona who was appointed as a federal district judge in the same jurisdiction, that the statutory duty of each United States Attorney within the district was to "prosecute for all offenses against the United States." United States v. Arnpriester, 37 F.3d 466, 467 (9th Cir.1994). The Arnpriester court went on to find that the United States Attorney in the district necessarily was responsible for investigation and that there could be no prosecution unless it is preceded by investigation. Id. Concluding that other attorneys serve only as assistants to the United States Attorney, the Ninth Circuit held that the attorney responsible for the investigation of a person suspected of violating the laws of the United States reasonably would be believed not to be impartial when that person was subsequently indicted, tried, and convicted. Id. "This analysis imputes to the United States Attorney the knowledge and acts of his assistants," the court reasoned:
Such "vertical imputation" to the head of the office is what is done by the criminal statute governing employment of a former government employee in any matter "which was under his official responsibility," 18 U.S.C. § 207(a). It is the standard adopted in two of the leading cases on disqualification of a former government lawyer acting for a private client in a matter in which he had official responsibility, General Motors Corp. v. City of New York, 501 F.2d 639 (2d Cir.1974); United States v. Standard Oil Co., 136 F.Supp. 345 (S.D.N.Y.1955); see Andrew I. Kaufman, Problems In Professional Responsibility (1976) 59. What disqualifies a former government prosecutor from acting for a private client in the same matter for which he had official responsibility operates equally to disqualify him from sitting as a judge in the same matter. A United States District Judge cannot adjudicate a case that he or she as United States Attorney began.
*823 Id. Similarly, where a district attorney signed a bill of indictment and also was responsible in a supervisory capacity for the prosecution of the charge against the defendant, the Pennsylvania Supreme Court held that the district attorney, on taking the bench, was disqualified from presiding over habeas corpus proceedings brought by the defendant. Com. ex rel. Allen v. Rundle, 410 Pa. 599, 189 A.2d 261, 262 (1963). The Rundle court accordingly reversed an order entered by the former district attorney denying the petition for a writ of habeas corpus. Id. Although noting that the record was entirely free from the slightest suggestion of prejudice or impropriety on the part of the judge, the court reasoned that it was desirable to have the habeas corpus petition heard by a judge who had no previous association with either the prosecution or the defense in the trial of the case. Id.
We note that the vicarious judicial disqualification standard incorporated into rule 18b(1)(a) is consistent with a conclusive, irrebuttable presumption, long recognized in Texas, that imputes knowledge of client confidences to all associated lawyers. In re O'Connor, 45 Sup.Ct. J. 970, 92 S.W.3d 446; Petroleum Wholesale, Inc. v. Marshall, 751 S.W.2d 295, 301 (Tex.App.-Dallas 1988, orig. proceeding); see Tex. Disciplinary R. Prof'l Conduct 1.06(f), reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 1998) (vicarious attorney disqualification in conflicts of interest between concurrent clients); Tex. Disciplinary R. Prof'l Conduct 1.09(b), reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 1998) (vicarious attorney disqualification in conflicts of interest between former and current clients); TEX. DISCIPLINARY R. PROF'L CONDUCT 1.10(b), reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998) (vicarious attorney disqualification in conflicts of interest in successive government and private employment).
Moreover, vertical vicarious judicial disqualification of the former head of an office comports with the duties imposed in Texas on supervisory lawyers by the rules of disciplinary conduct. See Tex. Disciplinary R. Prof'l Conduct 5.01, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 1998) (entitled "Responsibilities of a Partner or Supervising Lawyer"). Under rule 5.01(b), supervisory attorneys have an ethical duty to take reasonable remedial action to avoid or mitigate the consequences of known misconduct by the lawyers they supervise. Id. Comment 2 to rule 5.01 explains that "the general counsel of a government agency's legal department, or a lawyer having direct supervisory authority over specific legal work by another lawyer, occupies the position of authority contemplated by Rule 5.01(b)." TEX. DISCIPLINARY R. PROF'L CONDUCT 5.01 cmt. 2, reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998). The court of criminal appeals has acknowledged that this supervisory function is imposed on a head prosecutor by the nature of the position: "A district attorney, unlike an assistant, is the person in authority in the office, and he cannot as such officer escape his duties and responsibilities...." Hathorne v. State, 459 S.W.2d 826, 829 (Tex.Crim.App.1970) (op. on reh'g).
Appellant cites this Court to a federal habeas corpus case out of Texas, Bradshaw v. McCotter, 796 F.2d 100 (5th Cir.1986) (op. on reh'g) ("Bradshaw II"), in support of the proposition that disqualification of the juvenile court judge below is required in this case because of an appearance of impropriety created by inclusion on the pleadings of the name and title of the former Nueces County Attorney. The opinion appellant apparently relies on is Bradshaw v. McCotter, 785 F.2d 1327 (5th *824 Cir.1986) ("Bradshaw I"), the result of which was modified by Bradshaw II.
Originally, the Fifth Circuit held that the due process clause of the Fourteenth Amendment required a judge of the Texas Court of Criminal Appeals to disqualify himself because he had been the State's prosecuting attorney at the time of the petitioner's conviction. Bradshaw I, 785 F.2d at 1329. The name of the former State prosecutor had appeared on the State's appellate brief, but he had not participated in the prosecution "in any fashion whatsoever." Id. His name had been added to the brief only "as a matter of courtesy and protocol" by the local prosecutor who had prepared it. Id. Bradshaw I ordered federal habeas corpus relief. Id. On rehearing, however, Bradshaw II denied habeas corpus relief, holding that no due process violation was shown absent evidence that the appellate judge's vote was controlling. Bradshaw II, 796 F.2d at 101.
The Fifth Circuit decided both Bradshaw I and Bradshaw II without reference to judicial disqualification standards applicable to criminal cases in Texas. Bradshaw II, 796 F.2d at 101; Bradshaw I, 785 F.2d at 1329.[13] This Court, however, must be mindful that juvenile cases, while civil in nature, are quasi-criminal. See In re C.O.S., 988 S.W.2d 760, 765 (Tex.1999) (holding that the general civil rules requiring preservation of error in the trial court "cannot be applied across the board in juvenile proceedings."); see also In re M.S., 985 S.W.2d 278, 280 (Tex.App.-Corpus Christi 1999, no pet.) (applying rules regarding restitution in criminal cases to a juvenile case). Hence, we turn our analysis to the judicial disqualification standards applicable to criminal cases in Texas.

D. The Texas Code of Criminal Procedure
Article 30.01 of the code of criminal procedure recites:
No judge or justice of the peace shall sit in any case where he may be the party injured, or where he has been of counsel for the State or the accused, or where the accused or the party injured may be connected with him by consanguinity or affinity within the third degree, as determined under Chapter 573, Government Code.
TEX.CODE.CRIM. PROC. ANN. art. 30.01 (Vernon Supp.2002); see State ex rel. Millsap v. Lozano, 692 S.W.2d 470, 474-483 (Tex.Crim.App.1985) (orig.proceeding) (discussing historical development of constitutional and statutory judicial disqualification rules in Texas). The provisions of article 30.01 are mandatory. Ex parte Vivier, 699 S.W.2d at 863. It is a denial of a person's right to judicial impartiality in a criminal case to allow the state's attorney to later become judge in the same case. Ex parte Miller, 696 S.W.2d 908, 910 (Tex.Crim.App.1985). An objective standard applies to judicial disqualifications decided under article 30.01. See Ex parte Vivier, 699 S.W.2d at 863 ("[I]f we were to hold that the existence or lack of knowledge was to be the determining factor in resolving cases such as the one before us, appellate courts would then be deciding cases based upon whether the judge subjectively knew of his relation to a defendant on a case by case basis. The possibility of creating an *825 image to the public of judicial impropriety would be inherent, whether it actually existed or not. For these reasons we decline to hold that an Article 30.01 disqualification be based on the subjective knowledge of the judge."); see also Crawford v. State, 686 So.2d 199, 202 (Ala.Crim.App.1996) (holding that the objective fact of the judge's prior office as the district attorney for Mobile County at the time the appellant had been investigated and indicted controlled over the judge's subjective denial of bias).[14]
The court of criminal appeals has applied article 30.01 in a number of factual circumstances. Ex parte Miller, 696 S.W.2d at 910; Lee, 555 S.W.2d at 124; Carter v. State, 496 S.W.2d 603, 604 (Tex.Crim.App.1973); Rodriguez v. State, 489 S.W.2d 121, 123 (Tex.Crim.App.1972); Muro v. State, 387 S.W.2d 674, 676-77 (Tex.Crim.App.1965). We find the court of criminal appeals' approaches in these cases instructive in our determination of judicial disqualification standards applicable to juvenile adjudications.
In Lee, the court of criminal appeals found unassigned error based on a letter written to the defense attorney by the trial judge while acting as an assistant district attorney during plea negotiations in the appellant's first trial. Lee, 555 S.W.2d at 124. The trial judge in Lee was not the actual prosecutor assigned to the case and stated in the record he had no independent recollection of the case or the letter's contents. Nonetheless, the Lee court held that the record indicated participation sufficient to disqualify the trial judge. Id. at 125.
In Ex parte Miller, the judge of the trial court personally and actively participated as a prosecutor in the applicant's conviction, a fact that was apparent from the record. Ex parte Miller, 696 S.W.2d at 910. Specifically, the trial judge's signature as assistant district attorney appeared on an application for jury waiver, a waiver of indictment and charge by information, a plea bargaining agreement, an agreed motion to modify probation, and a motion to adjudicate guilt. Id. The judge's name also appeared on the docket sheet as the State's attorney. Id. No other attorney's name was shown as a representative of the State in the proceedings. Id. Citing both article V, section 11 of the Texas Constitution and article 30.01 of the code of criminal procedure, the Ex parte Miller court concluded that the trial judge had actively participated in applicant's trial as the State's attorney, and his involvement disqualified him from presiding as judge in a subsequent probation revocation hearing. Tex. Const.art. V, § 11; Tex.Code.Crim. Proc. Ann. art. 30.01 (Vernon Supp.2002); Miller, 696 S.W.2d at 910.
In Carter, the court of criminal appeals held that a typewritten notation on the docket sheet that the judge had been the prosecuting attorney on the case was not enough to mandate the judge's disqualification. The Carter court "reasoned that since there was no showing that the judge actually investigated, advised or participated in that case in any way, he was not acting `as counsel' as contemplated by" article V, section 11 of the Texas Constitution or "of counsel" under article 30.01 of the code of criminal procedure. Tex.Const. art. V, § 11; Tex.Code.Crim. Proc. Ann. art. 30.01 (Vernon Supp.2002); Carter, *826 496 S.W.2d at 604; see Gamez v. State, 737 S.W.2d 315, 319 (Tex.Crim.App.1987) (refusing to disqualify a judge whose signature stamp as a prosecutor appeared on an announcement of ready in the appellant's case and who had acted as a third-chair prosecutor, noting that arraignments for all the district courts in that county had been held in one courtroom and could have involved in excess of 100 cases at one time).
Further, in Rodriguez, the court of criminal appeals refused to disqualify a judge who was the first assistant criminal district attorney in Bexar County at the time the appellant was alleged to have committed the offense and at the time a complaint was filed. Rodriguez, 489 S.W.2d at 123. By the time the indictment was returned, the judge was no longer a member of the district attorney's staff. Id. He testified he had read the district attorney's file, and there was no record he had actually participated in the case. Id. The Rodriguez court held:
It is not shown that the trial judge, even though he was the First Assistant to the Criminal District Attorney and in charge of capital prosecutions, actually investigated, advised or participated in this case in any way; it is therefore not shown that he "acted as counsel in the case" as contemplated by the constitutional and statutory provisions relied upon.
Id.
In Muro, the court of criminal appeals held that the trial judge was not disqualified as a result of having served as an assistant district attorney at the time of the offense since the former prosecutor had no recollection of working on the case and, at the time the case was filed, had been assigned to work only on capital cases and to act as legal advisor to the commissioners court. Muro, 387 S.W.2d at 676-77. Because the case did not come within the purview of the former prosecutor's assignment as assistant criminal district attorney, the court reasoned, he was not disqualified to sit on the case as trial judge. Id.
Also, it is well settled in Texas that the mere fact that the trial judge personally prosecuted the defendant for past crimes does not disqualify the judge from presiding over a trial where a new offense is charged. Hathome, 459 S.W.2d at 829; see Madden v. State, 911 S.W.2d 236, 240 (Tex.App.-Waco 1995, pet. ref'd) (holding that a judge who had prosecuted the defendant in a previous case used for enhancement purposes was not disqualified under article 30.01, noting that in prior cases the fact that a trial judge had personally prosecuted or defended a defendant in past cases did not disqualify him from presiding over a trial where a new offense was charged); see also Dean v. State, 938 S.W.2d 764, 767 (Tex.App.-Houston [14th Dist.] 1997, no pet.) ("Here, the trial judge prosecuted appellant in an earlier, unrelated case. Therefore, the prohibition in article 30.01 does not apply.").
In keeping with our own state court precedent and applying Texas law, the Fifth Circuit rejected the contention that a defendant was deprived of a fair and impartial trial because the judge who presided at his pretrial hearing was a first assistant district attorney at the time of the alleged commission of the offense. Donald v. Jones, 445 F.2d 601, 606 (5th Cir.1971). The judge testified he had not heard of the defendant before taking the bench, and he did not participate in the investigation of the case. Id. at 607. Consistent with the existence of an implicit temporal component in judicial disqualification matters, the Fifth Circuit focused on the fact that the defendant was not *827 indicted on the offense until eight months after the judge took the bench. Id. Further, the Fifth Circuit noted that the judge had not presided over the actual trial of the case. Id. Accordingly, the Donald court affirmed the lower court's judgment denying an application by the defendant for a writ of habeas corpus. Id.
Similarly, in Sunday v. State, 755 S.W.2d 500 (Tex.App.-Beaumont 1988, pet. ref'd), the Beaumont court of appeals held that article 30.01 only barred a judge from sitting in a case in which he personally had been counsel. Id. at 501. The court noted that the fact that the judge had been a district attorney at the time of the defendant's prior murder conviction did not disqualify him with respect to the defendant's trial for robbery that occurred a year after the judge left the district attorney position, nor did the use of the defendant's prior murder conviction to enhance punishment in the robbery prosecution constitute grounds for disqualification. Id.
Finally, as we note is the practice in other jurisdictions when analyzing judicial disqualification issues, we turn to the code of judicial conduct applicable to Texas judges.

E. The Texas Code of Judicial Conduct
The Texas Code of Judicial Conduct currently provides:
Canon 2. Avoiding Impropriety and the Appearance of Impropriety In All of the Judge's Activities
A. A judge shall comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.
TEX.CODE JUD. CONDUCT. CANON 2A, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. B (Vernon 1998).[15] "The Code of Judicial Conduct does not exist for the benefit of the judiciary exclusively, but rather for the community and the state as well." In re Sheppard, 815 S.W.2d 917, 921 (Tex.Spec.Ct.Rev.1991).
Citing the Alabama Canons of Judicial Ethics,[16] the Alabama Court of Criminal *828 Appeals in two separate cases disqualified a judge who had served as the district attorney of Mobile County. Crawford, 686 So.2d at 202; Crumpton v. State, 677 So.2d 814, 816 (Ala.Crim.App.1995). The challenged judge stated that he neither had knowledge of nor any personal involvement in the prosecutions, although the defendants in both cases had been investigated and indicted during the judge's tenure as district attorney. Crawford, 686 So.2d at 202. Nonetheless, the Alabama Court of Criminal Appeals reversed both cases, stating in Crawford that: "the question is not whether the judge is in fact impartial but whether another person `might reasonably question the judge's impartiality.' In this case, that question can be answered only in the affirmative." Id. at 203.[17]

V. APPLICATION OF THE LAW TO THE FACTS
We first conclude we must apply the provisions of article V, section 11 of the Texas Constitution and rule 18b(1)(a) of the Texas Rules of Civil Procedure to judicial disqualification proceedings in juvenile adjudications. TEX. CONST. art. V, § 11; TEX.R. CIV.P. 18b(1)(a); see TEX. FAM.CODE § 51.17 (Vernon 2002) (establishing generally that the rules of civil procedure apply to juvenile proceedings). Thus, we apply Texas case law interpreting rule 18b(1)(a) to the record before us. TEX.R. CIV. P. 18b(1)(a). However, we also are mindful, as we must be, of Texas authority interpreting article 30.01 of the code of criminal procedure and canon 2 of the code of judicial conduct. TEX.CODE.CRIM. PROC. ANN. art. 30.01 (Vernon Supp.2002); Tex.Code Jud. Conduct, Canon 2A, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. B (Vernon 1998).
With these parameters in mind, we hold that rule 18b(1)(a) imposes an objective standard for judicial disqualification as applied to juvenile adjudications that does not require any showing of actual bias, harm, or prejudice. Further, harmonizing the various approaches discussed above by different courts in Texas as well as interpretations of similar disqualification statutes in other jurisdictions, we hold under rule 18b(1)(a) as applied to juvenile adjudications that the grounds for constitutional disqualification from hearing a case of a judge who was a former prosecutor are: (1) personal participation by the judge as prosecutor in any way, however slight, in the investigation or prosecution of the same case or of a case arising out of the same set of operative facts; or (2) supervisory authority by the judge as prosecutor at the time the case was investigated, prosecuted, or adjudicated over attorneys who actually investigated or prosecuted the same case or a case arising out of the same set of operative facts. See *829 State v. Julien, 47 P.3d 1194, 1200 (Colo.2002) (listing similar factors).[18]
The record before us indicates there is no dispute that the juvenile court judge below was the Nueces County Attorney while his office investigated and prosecuted appellant. As with the former Arizona United States Attorney-turned-federal judge in Arnpriester and the former Mobile County district attorney in Crawford, we find that the statutory duties of county attorneys and the responsibilities imposed in general on supervisory lawyers in Texas combined to make the former Nueces County Attorney-turned-judge here ultimately responsible for appellant's prosecution. Arnpriester, 37 F.3d at 467; Crawford, 686 So.2d at 202.
We emphasize that the record in this case is entirely free of the slightest suggestion of prejudice or impropriety on the part of the juvenile court judge.[19]Rundle, 189 A.2d at 262. Nonetheless, the duties and responsibilities inherent in the office of Nueces County Attorney adhered to the juvenile court judge when he left the prosecutorial bar and took the bench, and we cannot escape the effect of those duties and responsibilities. Hathorne, 459 S.W.2d at 829. We find that disqualification of the juvenile court judge below is mandated by the statutory duties and supervisory responsibilities imposed by his former office as Nueces County Attorney, irrespective of any direct, personal involvement on his part with the investigation or prosecution of appellant's juvenile adjudication. Arnpriester, 37 F.3d at 467; Crawford, 686 So.2d at 202.[20] "The question is not whether the judge is in fact impartial but whether another person `might reasonably question the judge's impartiality.' "Crawford, 686 So.2d at 202. We can answer that question only in the affirmative. Id. at 203. Thus, to promote public confidence in the integrity and impartiality of the judiciary, we reason that it is desirable to have appellant's application for writ of habeas corpus heard by a judge who has no previous association with either the prosecution or the defense in the challenged adjudication. Rundle, 189 A.2d at 262.
Accordingly, we hold as a matter of law that the juvenile court judge below has no jurisdiction to preside over appellant's application for writ of habeas corpus. Buckholts, 632 S.W.2d at 148. The juvenile court's "Findings of Fact and Conclusions of Law and Order" dated September 11, 2001, which denied appellant's fourth application for writ of habeas corpus, are void. Ex parte Vivier, 699 S.W.2d at 863-64.

VI. CONCLUSION
We reverse and remand with instructions that appellant's application for writ of habeas corpus proceed under the provisions *830 of rule 18a of the rules of civil procedure.[21]
NOTES
[1] By a footnote in appellant's brief, appellant informed us: "Without asserting an impropriety, Counsel nevertheless believes it is noteworthy to point out that [the juvenile court judge] ... was the Prosecutor (County Attorney) in charge of [K.E.M.'s] prosecution for the attempted sexual assault." The State did not respond to appellant's note. At submission of the case, we requested briefing from the parties of the judicial disqualification issue raised by this information. Tex.R.App. P. 38.7. This opinion follows our receipt of additional briefing on the issue from appellant.
[2] Tex. Const. art. V, § 11.
[3] TEX.R. CIV. P. 18b(1)(a).
[4] TEX.CODE.CRIM. PROC. ANN. art. 30.01 (Vernon Supp.2002).
[5] Tex.Code Jud. Conduct, Canon 2A, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. B (Vernon 1998).
[6] See Hathorne v. State, 459 S.W.2d 826, 828 (Tex.Crim.App.1970) (op. on reh'g) (taking judicial notice of the fact that a trial judge had been a district attorney at the time of a previous trial); see also Strahan v. State, 87 Tex.Crim. 324, 221 S.W. 976, 977 (1920) (taking judicial notice of a trial judge's tenure as district attorney and appointment to the bench).
[7] We note that the prosecutorial functions of the Nueces County Attorney's office were consolidated with the Nueces County District Attorney's office in 1999 before the former Nueces County Attorney began his tenure as presiding judge of the court at issue.
[8] Appellant's third application for writ of habeas corpus was the subject of an earlier appeal and dismissal at the request of appellant.
[9] We also take judicial notice that the juvenile court judge, following his initial appointment as presiding judge of the court at issue, was elected to that bench in 2000 and is the current presiding judge of that court.
[10] Our holding in this case is limited to judicial disqualification in juvenile adjudications and does not apply to recusal, either in juvenile adjudications or any other context. Compare TEX.R. CIV. P. 18b(1)(a) (disqualification as a result of prior representation in the matter in controversy) with TEX.R. CIV. P. 18b(2)(d) (recusal as a result of prior representation in the matter in controversy); see Gulf Maritime Warehouse Co. v. Towers, 858 S.W.2d 556, 563 (Tex.App.-Beaumont 1993, writ denied) (not reaching the recusal question of "financial interest in the subject matter in controversy" under rule 18b(2)(e) because of a finding of disqualification for "interest in the subject matter in controversy" under rule 18b(1)(b)).
[11] We also note that rule 18b has been applied to judicial recusal motions in criminal cases. TEX.R. CIV. P. 18b(2); see Vargas v. State, 883 S.W.2d 256, 259 (Tex.App.-Corpus Christi 1994, pet. ref'd) (applying the recusal provisions of rule 18b(2) to a challenge to an assigned "drug court" judge). Further, the court of criminal appeals has applied the procedural requirements of rule 18a to criminal cases. TEX.R. CIV. P. 18a; Arnold v. State, 853 S.W.2d 543, 544 (Tex.Crim.App.1993).
[12] We note that section 455(b)(2) limits vicarious disqualification to federal judges previously in private practice, as distinct from prior service in government employment addressed by section 455(b)(3). See 28 U.S.C. § 455(b)(2) (2002) (requiring that a federal judge" shall also disqualify himself" where "in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it....").
[13] The court of criminal appeals has given short shrift to Bradshaw I: "The original decision in Bradshaw was on a different basis than that urged in the present case, and is a tenuous decision at best. It is not authoritative and certainly not persuasive to those familiar with the protocol involved." Gamez v. State, 737 S.W.2d 315, 319 (Tex.Crim.App.1987).
[14] Contra Garrett v. State, 155 Tex.Crim. 214, 233 S.W.2d 498, 499 (1950) (refusing to hold that a judge was disqualified who had been a district attorney at the time the offense involved was alleged to have been committed, noting that as a district attorney, he took no part in investigating the case, and he did nothing more as judge than receive the indictment and make necessary preliminary orders before transferring the case to another judge).
[15] The American Bar Association approved its model Code of Judicial Conduct in 1972. The Texas Supreme Court adopted the substance of that code, with minor changes, in 1974 (the "1974 Code"). Canon 3(C)(1) of the 1974 Code provided:

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including, but not limited to, instances where:
(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
(b) he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;
(c) he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.
Charles Bleil & Carol King, Focus on Judicial Recusal: A Clearing Picture, 25 Tex. Tech. L.Rev. 773, 784-85 (1994). The content of canon 3(C)(1) of the 1974 Code no longer exists in the code of judicial conduct. Id. Instead, the supreme court moved the substance of that canon to rule 18b of the rules of civil procedure, where its provisions became part of the law with which the current canon 2A requires a judge to comply. Id.
[16] Canon 3(C)(1), Alabama Canons of Judicial Ethics states:

(1) A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned, including but not limited to instances where:
(a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.
(b) He served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer in the matter, or the judge or such lawyer has been a material witness concerning it.
Crawford v. State, 686 So.2d 199, 202 (Ala.Crim.App.1996); compare TEX.R. CIV. P.18b(1)(a).
[17] Contra Smith v. Beckman, 683 P.2d 1214, 1216 (Colo.App.1984) (holding that the knowledge of another attorney in the district attorney's office is not imputed to his or her colleagues, reasoning that the rule is different for law firm attorneys because they individually and collectively have a financial interest in the outcome of the case); People v. Burnett, 73 Ill.App.3d 750, 29 Ill.Dec. 678, 392 N.E.2d 235, 238 ([1st Dist.] 1979) (reasoning that the trial judge's supervisory position in his former capacity as an assistant state's attorney did not amount to his having acted "as counsel" within the meaning of the applicable judicial disqualification rule).
[18] Appellant informs us in his supplemental brief that "[t]hrough inquiry with the County Attorney's office, Appellant has been unable to locate any other direct participation by [the juvenile court judge] in Appellant's prosecution" other than the appearance of the judge's name and title on the pleadings. We note that in cases where the facts necessary to determine judicial disqualification are undeveloped on appeal, the appellate court may abate the appeal and return the case to the trial court for an evidentiary hearing on the issue. McElwee v. McElwee, 911 S.W.2d 182, 186 (Tex.App.-Houston [1st Dist.] 1995, writ denied). Because of our disposition of the disqualification issue as a matter of law, we do not find abatement for additional factfinding necessary.
[19] It does not appear that the issue was brought to the judge's attention.
[20] We are not presented with nor do we express any opinion regarding application in juvenile adjudications of the vicarious judicial disqualification provision of rule 18b(1)(a) to former non-supervisory assistant prosecutors. TEX.R. CIV. P. 18b(1)(a).
[21] TEX.R. CIV. P. 18a.